62 Cal.Rptr.3d 492 (2007)
153 Cal.App.4th 202
MORONGO BAND OF MISSION INDIANS, Plaintiff and Respondent,
v.
STATE WATER RESOURCES CONTROL BOARD, Defendant and Appellant.
No. C052177.
Court of Appeal of California, Third District.
July 12, 2007.
*493 Bill Lockyer, Attorney General, Tom Greene and Mary E. Hackenbracht, Assistant Attorneys General, and Matthew J. Goldman, Deputy Attorney General, for Defendant and Appellant.
Manuela Albuquerque, City Attorney (Berkeley), for League of California Cities and California State Association of Counties as Amici Curiae on behalf of Defendant and Appellant.
Somach, Simmons & Dunn, Stuart L. Somach, Kristen T. Castañlos, Sacramento, *494 and Kanwarjit S. Dua for Plaintiff and Respondent.
Diepenbrock Harrison, Michael V. Brady, Sacramento, Jon D. Rubin and Sean K. Hungerford for San Luis & Delta-Mendota Water Authority and Westlands Water District as Amici Curiae on behalf of Plaintiff and Respondent.
BUTZ, J.
Is a water right holder facing license revocation by the State Water Resources Control Board (Water Board) deprived of due process of law when the revocation is being prosecuted by the same attorney who simultaneously acted as legal advisor to the Water Board in an unrelated administrative proceeding? The trial court answered this question in the affirmative. Relying on Quintero v. City of Santa Ana (2003) 114 Cal.App.4th 810, 7 Cal.Rptr.3d 896 (Quintero) as controlling precedent, the court issued a writ of mandate ordering the disqualification of Water Board Attorney Samantha Olson as a prosecutor, in the case.
The Water Board appeals, claiming that (1) Quintero was wrongly decided and should not be followed by this court, and (2) Quintero is distinguishable and did not require disqualification of Attorney Olson from acting as prosecutor in the revocation proceeding.
We decline the Water Board's invitation to part company with Quintero. We also conclude that the trial court correctly followed Quintero and other precedents in ordering Attorney Olson disqualified. We shall affirm.

FACTUAL BACKGROUND
On April 28, 2003, the Water Board issued a "Notice of Proposed Revocation" of water right license No. 659 (License 659) against licensee/plaintiff Morongo Band of Mission Indians, a federally recognized Indian tribe of California (Morongo). Water Board staff counsel Samantha Olson was identified as one of the members of the enforcement team prosecuting the case. Morongo objected to the proposed revocation and filed a request for rehearing, which the Water Board denied.
On March 15, 2004, Morongo filed a petition to disqualify the entire enforcement team based on the fact that Attorney Olson had concurrently acted as advisory counsel to the Water Board in an unrelated proceeding.
The unrelated proceeding on which Attorney Olson served as advisory counsel to the Water Board has been referred to in this action as the Lower American River proceeding. Although the record is unclear as to when it was commenced, evidentiary hearings were conducted in the Lower American River proceeding on May 31 and June 13, 2002. The Water Board also held closed sessions to deliberate its decision in the Lower American River proceeding on July 16, 2003, and the proceeding continued until it was terminated on January 11, 2005. Thus, there was a 22-month overlap between initiation of the Morongo case and the termination of the Lower American River proceeding.
Morongo's petition to disqualify the enforcement team was denied by a hearing officer, and a petition for reconsideration to the Water Board was also denied.
Morongo then filed the instant petition for writ of mandate in superior court, contending that the Water Board had abused its discretion in denying its petition to disqualify the enforcement team.
The trial court, relying on Quintero's "bright-line rule," that an administrative agency attorney may not hold more than one position at the same time, issued a writ of mandate compelling Attorney Olson's *495 disqualification, owing to her simultaneous status as prosecutor in the Morongo case and advisory counsel in the Lower American River proceeding. The Water Board appeals.

DISCUSSION

I. Standard of Review
The parties are in disagreement on the standard of review of the judgment granting mandamus relief to disqualify Attorney Olson. The Water Board claims this court should apply its independent judgment, "balancing efficiency and fairness concerns." Morongo claims the order is presumed correct and that the Water Board must show a "clear case" of abuse of discretion. The truth lies somewhere in between.
The trial court's order of disqualification constitutes a mixed question of law and fact. We apply the substantial evidence standard to review the trial court's express or implied factual findings. We then independently review the court's legal conclusion that Attorney Olson's participation would render the hearing fundamentally unfair. (See Nightlife Partners, Ltd. v. City of Beverly Hills (2003) 108 Cal. App.4th 81, 87, 133 Cal.Rptr.2d 234 (Nightlife Partners); Gai v. City of Selma (1998) 68 Cal.App.4th 213, 219, 79 Cal. Rptr.2d 910.)

II. Quintero Was Correctly Decided
The Water Board first launches a broadside attack upon the Quintero decision, claiming it was wrongly decided and should not be followed by this court.
In Quintero, a discharged employee of Santa Ana's police department appealed the decision to terminate him to the city's Personnel Board. The Personnel Board upheld the termination and the plaintiff petitioned for relief, on grounds, inter alia, that he had been denied a fair hearing due to the fact that the assistant city attorney who prosecuted the case (Attorney Halford) had, at times, also acted as counsel for the Personnel Board. The trial court rejected the challenge because the plaintiff had not shown "actual bias" on the part of the Personnel Board. (Quintero, supra, 114 Cal.App.4th at p. 812, 7 Cal.Rptr.3d 896.)
Santa Ana argued that the plaintiff had shown neither actual bias nor the probability of bias on the part of the Personnel Board, since there was no evidence that Attorney Halford represented both the city and the Board in the same proceeding. (Quintero, supra, 114 Cal.App.4th at p. 813, 7 Cal.Rptr.3d 896.)
The Court of Appeal, Fourth Appellate District, Division Three, disagreed. While early cases had held that overlapping roles between prosecutorial and adjudicatory functions in administrative proceedings do not amount to a constitutional violation absent specific evidence of bias (Quintero, supra, 114 Cal.App.4th at p. 814, 7 Cal. Rptr.3d 896), case law in California has evinced "rising `concern over too close a connection between an advocate and the decisionmaker.'" (Ibid.)
Against this backdrop, the Quintero court reviewed several instances in which Attorney Halford, who prosecuted the case, had, in the recent past, acted as legal advisor to the Personnel Board. Viewing the historical record in its entirety, the Court of Appeal determined that Halford's participation as prosecutor in the Personnel Board proceeding created the appearance of bias, thereby violating procedural due process. "For the Board to allow its legal adviser to also act as an advocate before it creates a substantial risk that the Board's judgment in the case before it will be skewed in favor of the prosecution. The chance that the Board will show a *496 preference toward [Attorney] Halford, even `"perhaps unconsciously"' is present and unacceptable." (Quintero, supra, 114 Cal.App.4th at p. 817, 7 Cal.Rptr.3d 896.) The court reached this conclusion despite the fact there was no evidence that Halford performed dual functions in the plaintiffs case. (Ibid.)
The Water Board claims that Quintero got it wrong because case law establishes that, with the exception of direct financial interest, "`actual bias' rather than the `appearance of bias' is the standard for triggering a due process violation in a challenge to the administrative decision maker based on institutional bias caused by the structure of the agency." We disagree.
As Quintero was clear to point out, California law has evolved since the early days when actual bias had to be proved to show a due process violation in administrative proceedings. (Quintero, supra, 114 Cal. App.4th at p. 814, 7 Cal.Rptr.3d 896.)
In the seminal case of Howitt v. Superior Court (1992) 3 Cal.App.4th 1575, 5 Cal. Rptr.2d 196 (Howitt), Justice Wiener first raised due process concerns over the fact that counsel in administrative agencies sometimes perform overlapping functions, acting as advisors to the decision maker while also taking on a prosecutorial role in proceedings before it, posing a risk that the decision maker's impartiality might be seriously compromised. "It is the attorney's dual role as both advocate for a party and adviser to the tribunal which does violence to that constitutional ideal." (Id. at p. 1586, 5 Cal.Rptr.2d 196.) Howitt held that lawyers from a county counsel's office could, consistent with due process, prosecute the case before the employment appeals board provided they had been adequately screened off from the attorneys from the same office who were advising the board. (Id. at p. 1587, 5 Cal.Rptr.2d 196.)
In Nightlife Partners, the Court of Appeal, Second Appellate District, Division Three, held that "due process in an administrative hearing also demands an appearance of fairness and the absence of even a probability of outside influence on the adjudication." (Nightlife Partners, supra, 108 Cal.App.4th at p. 90, 133 Cal.Rptr.2d 234, italics added.) There, the fact that a hearing officer who ruled against the plaintiffs in an administrative appeal was assisted in procedural matters by an assistant city attorney who had represented the city in its initial denial of plaintiffs' permit application was held to constitute a violation of due process, despite the lack of evidence of actual bias on the part of the hearing officer. (Id at pp. 90-94, 133 Cal.Rptr.2d 234.) Although Nightlife Partners was not a financial interest case, the appearance of bias was considered determinative.
Quintero builds upon the principles established in Howitt and Nightlife Partners that the right to an impartial tribunal is compromised when an agency prosecutor is allowed to maintain too close a relationship with the administrative decision maker.
The California Supreme Court has signaled that it is comfortable with Quintero's holding. Notwithstanding the Attorney General's request as amicus curiae on behalf of the Water Board that the court grant review, the court denied review and refused to depublish the case. (Quintero, supra, 114 Cal.App.4th at p. 818, 7 Cal. Rptr.3d 896.)
The Water Board's position that actual bias is still the touchstone for disqualification in administrative proceedings runs counter to recent developments in the case law. In Haas v. County of San Bernardino (2002) 27 Cal.4th 1017, 119 Cal.Rptr.2d 341, 45 P.3d 280 (Haas), the state's high *497 court relied solely on an "appearance of bias" standard in striking down a county's practice of appointing hearing officers whose prospects of future work depended solely upon the county's goodwill, since there would be a natural tendency to reward those officers whose decisions favored the County by giving them future appointments. (Id at pp. 1020-1021, 1034, 119 Cal.Rptr.2d 341, 45 P.3d 280.) And the appearance of bias was also held determinative in Yaqub v. Salinas Valley Memorial Healthcare System (2004) 122 Cal. App.4th 474, 485-486, 18 Cal.Rptr.3d 780, where the Sixth Appellate District ruled that a hearing officer's close prior relationship with a hospital required his disqualification, despite the absence of evidence of actual bias or direct financial interest in the outcome of the case.
We therefore agree with Morongo that Quintero is not an anomaly, but represents an evolution of the law in due process jurisprudence. It is far too late in the day for the Water Board to claim that an "appearance of bias" standard has no place in analyzing procedural due process challenges to the impartiality of administrative proceedings.
The Water Board's extensive reliance on Withrow v. Larkin (1975) 421 U.S. 35, 95 S.Ct. 1456, 43 L.Ed.2d 712 (Withrow) to question Quintero's viability as precedent is unpersuasive. In Withrow, the United States Supreme Court held only that medical board members who performed both investigatory and adjudicatory functions in the same administrative proceeding did not automatically render the proceeding constitutionally infirm. (Id. at pp. 51-55, 95 S.Ct. at pp. 1466-1468, 43 L.Ed.2d at pp. 726-728.) However, a far different situation is presented "where advocacy and decisionmaking roles are combined. By definition, an advocate is a partisan for a particular client or point of view. The role is inconsistent with true objectivity, a constitutionally necessary characteristic of an adjudicator." (Howitt, supra, 3 Cal. App.4th at p. 1585, 5 Cal.Rptr.2d 196; see also Nightlife Partners, supra, 108 Cal. App.4th at pp. 97-98, 133 Cal.Rptr.2d 234 [combination of adjudicatory and advocacy functions is "always fraught with more problems than when there is some combination of investigatory and adjudicatory functions"].)
Quintero properly applies the principles of Howitt and Nightlife Partners to hold that permitting an attorney to occupy the dual role of advocate in one proceeding and advisor to the decision maker in another creates an intolerable risk of bias and thus fails to comport with principles of due process. "The chance that the Board will show a preference toward [advisory counsel], even `"perhaps unconsciously"' is present and unacceptable." (Quintero, supra, 114 Cal.App.4th at p. 817, 7 Cal. Rptr.3d 896.) We therefore do not accept the Water Board's characterization of Quintero as an outlaw case. We instead agree with its holding and believe it reflects the current state of the law.

III. Quintero Is Dispositive Here
The Water Board takes the fall-back position that even if Quintero is good law, it is distinguishable. This contention may be broken into two subarguments: (1) unlike the city in Quintero, the Water Board is governed by California's Administrative Procedure Act (APA) (Gov.Code, §§ 11370, 11340 et seq.),[1] which contains procedural protections against bias that were followed in this case; and (2) the trial court erroneously viewed Quintero as articulating a "bright-line rule" against simultaneous functions by a single attorney *498 when in fact it was a "totality of the circumstances" case, significantly distinguishable from the case at bar.

A. The APA Is Not the Exclusive Measure of Whether a Due Process Violation Has Occurred
California's APA regulates and strictly limits contacts between an agency's prosecutor and the officers the agency selects to preside over hearings and ultimately decide adjudicative matters. (Department of Alcoholic Beverage Control v. Alcoholic Beverage Control Appeals Board (Quintanar et al.) (2006) 40 Cal.4th 1, 5, 50 Cal. Rptr.3d 585, 145 P.3d 462 (hereafter Quintanar); see § 11340 et seq.) The APA requires a separation of staff functions within the agency (§ 11425.10), rules for disqualification of presiding officers (§ 11425.30), and limitations on ex parte communications between employees and hearing officers of an administrative agency (§ 11430.10).
The Water Board puts great emphasis on the fact that the city in Quintero, unlike the Water Board here, was not governed by the APA. Pointing out that the APA contains no express bar against counsel serving both as a decision maker's advisor and prosecutor in unrelated proceedings (§ 11425.30), the Water Board claims that its undisputed compliance with the APA constituted all the process that was due in this case, thereby rendering Quintero distinguishable. We are unimpressed.
The APA was enacted in 1995, when the law applying an "appearance of bias" standard to administrative proceedings was still in its infancy. It would be unreasonable to suggest that by enacting the APA, the Legislature intended to draw an immutable permanent boundary around the limits of due process in administrative proceedings. But even if such a speculative inference Could be indulged in, it would not further the Water Board's argument. While "the provisions of the APA are helpful as indicating what the Legislature believes are the elements of a fair and carefully thought out system of procedure for use in administrative hearings" (Nightlife Partners, supra, 108 Cal.App.4th at p. 91, 133 Cal.Rptr.2d 234), it is a matter for the courts, not the Legislature, to decide whether an administrative proceeding complies with procedural due process. (See generally Mathews v. Eldridge (1976) 424 U.S. 319, 334, 96 S.Ct. 893, 902, 47 L.Ed.2d 18, 33; Holmes v. Hallinan (1998) 68 Cal.App.4th 1523, 1531-1532, 81 Cal. Rptr.2d 174.)
The principles upon which the Quintero decision rests, such as the appearance of bias and risk of unfairness when board counsel assumes concurrent dual roles, arise from the basic right to an impartial tribunal.[2] Their vitality does not depend upon the existence of any statute. Although the APA requires a separation between agency functions (§ 11425.10, subd. (a)(4)), it does not flesh out the full range and scope of that separation (see § 11425.30). The fact that the APA did not foresee and incorporate Quintero's prohibition against an attorney serving, two ethically incompatible roles does not, as the Water Board asserts, mean that the Law Revision Commission "got it wrong" in the 1990's; it means only that statutes *499 do not always keep pace with the courts in crafting due process protections.[3]
In its reply brief, the Water Board asserts that the recent California Supreme Court decision in Quintanar reflects that court's belief that APA compliance is sufficient to satisfy due process.[4] Specifically, the Water Board focuses on one footnote of the opinion indicating that the APA allows "the separation of functions ... on a case-by-case basis." (Quintanar, supra, 40 Cal.4th at p. 16, fn. 12, 50 Cal.Rptr.3d 585, 145 P.3d 462.) But, as the court expressly states in the next footnote, its decision was based strictly on application of the APA, and "we express no opinion concerning how the requirements of due process might apply here." (Quintanar, at p. 17, fn. 13, 50 Cal.Rptr.3d 585, 145 P.3d 462, italics added.)
Moreover, what little the high court did say in Quintanar about the general principles of due process undermines, rather than supports, the Water Board's position. In the second paragraph of the opinion, Justice Werdeger, writing for the unanimous court, declares: "While the state's administrative agencies have considerable leeway in how they structure their adjudicatory functions, they may not disregard certain basic precepts. One fairness principle directs that in adjudicative matters, one adversary should not be permitted to bend the ear of the ultimate decision maker or the decision maker's advisers in private. Another directs that the functions of prosecution and adjudication be kept separate, carried out by distinct individuals." (Quintanar, supra, 40 Cal.4th at p. 5, 50 Cal.Rptr.3d 585, 145 P.3d 462, italics added.) This statement strongly indicates that the California Supreme Court agrees with the principle applied by the trial court that allowing an individual attorney to serve in both prosecutorial and advisory roles at the same time creates a perception of bias and violates fundamental fairness.

B. A Bright-Line Rule Against Dual Representation Is Necessary
The Water Board also argues that the trial court misinterpreted Quintero as creating a "bright-line rule" barring counsel from ever serving as advisor to the decision maker in one case while prosecuting another. Instead, the Water Board argues, Quintero was a "totality of the circumstances" case. The Water Board asserts that this case commands a different result because Attorney Olsen's contacts with the Water Board in the Lower American River proceeding were fewer and less significant than the contacts Attorney Halford had with the city's personnel board in Quintero.
The Water Board's argument does not wash. Quintero did articulate that a single attorney concurrently performing both functions was incompatible with due process. In addressing the plaintiffs contention that the entire city attorney's office should be disqualified from carrying out both prosecutorial and advisory functions, the Quintero court stated: "We reject this claim as overly broad and contrary to law. As noted in [Howitt], supra, 3 Cal.App.4th *500 1575, 5 Cal.Rptr.2d 196, dual representation is not barred so long as there is an adequate separation of the two roles and the attorneys performing them (Id. at pp. 1586-1587, 5 Cal.Rptr.2d 196.) What is inappropriate is one person simultaneously performing both functions. That is not to say that once a city attorney has appeared in an advisory role, he or she cannot subsequently act as a prosecutor, or vice versa. But the attorney may occupy only one position at a time and must not switch roles from one meeting to the next." (Quintero, supra, 114 Cal.App.4th at p. 817, 7, Cal.Rptr.3d 896, italics added.) This statement foreshadows the California Supreme Court's later pronouncement that due process requires that "the functions of prosecution and adjudication be kept separate, carried out by distinct individuals." (Quintanar, supra, 40 Cal.4th at p. 5, 50 Cal.Rptr.3d 585,145 P.3d 462.)
Quintero applied a totality-of-the-circumstances test because, unlike the situation here, Attorney Halford had not carried out both prosecutorial and advisory functions at the same time. (Quintero, supra, 114 Cal.App.4th at pp. 814, 817, 7 Cal.Rptr.3d 896.) Consequently, it was necessary for the court to examine the depth and scope of Halford's previous advisory roles to determine whether the risk of bias in having him prosecute the proceeding was intolerably high. In doing so, the court found that Halford "clearly had an ongoing relationship with the Board beyond just appearing as counsel for a party. [¶] This is enough to show the probability of actual bias. It would only be natural for the Board members, who have looked to Halford for advice and guidance, to give more credence to his arguments when deciding plaintiffs case. Whether or not they actually did is irrelevant; the appearance of unfairness is sufficient to invalidate the hearing." (Id, at p. 816, 7 Cal.Rptr.3d 896.)
In this case, resolution of the matter is far less complicated. Beginning with Howitt, our case law dictates that where one attorney performs both functions, the "bright line" has been crossed and due process demands her disqualification.
Accordingly, we will not embark on a detailed examination of the depth and scope of Attorney Olsen's Water Board contacts in the Lower American River proceeding in an ostensible effort to determine whether her disqualification is warranted under the "totality of the circumstances." The fact that she wore a prosecutorial hat in one proceeding and an advisory hat in another in the same time frame is sufficient. As the trial court pointed out, a firm rule against a single attorney concurrently carrying out both functions is essential not only as a practical matter, but to avoid unseemly judicial inquiry into attorney-client communications and attorney work product materials that might otherwise be privileged.
Allowing an attorney from the administrative board to act both as prosecutor and the decision maker's advisor in proceedings that overlap necessarily puts a licensee facing prosecution at an unfair disadvantage. Human nature being what it is, the temptation is simply too great for the Water Board members, consciously or unconsciously, to give greater weight to Attorney Olson's arguments by virtue of the fact she also acted as their legal advisor, albeit in an unrelated matter. "[A] system in which adversaries can judge or advise judges is fundamentally inconsistent with an adversary system of adjudication." (Asimow, Toward a New California Administrative Procedure Act (1992) 39 UCLA L.Rev. 1067,1167.)
We reiterate that the rule we apply merely requires that an individual staff attorney not prosecute one case while advising *501 the decision maker in another. Nothing in California law prohibits the Water Board from maintaining one office with two divisions, prosecutorial and advisory, providing that the attorneys within each division are properly screened off from improper communications with one another. (Howitt, supra, 3 Cal.App.4th at p. 1587, 5 Cal.Rptr.2d 196.)
The Water Board bemoans the fact that the trial court's decision and continued vitality of Quintero would mean that it would have to "permanently divide already scarce staff resources," creating a burden on the ability of staff counsel to perform their functions.
We refuse to adjust the minimum standards of due process to accommodate the Water Board's asserted budgetary restraints. The guarantee of an impartial tribunal is not so cheap that it can be purchased at the price of convenience or expediency.

DISPOSITION
The judgment is affirmed. Morongo is awarded its costs on appeal. (Cal. Rules of Court, rule 8.276(a)(2).)
I concur: SCOTLAND, P.J.
ROBIE, J.
I respectfully dissent.
The State Water Resources Control Board (the Board) is a five-member panel that "exercise[s] the adjudicatory and regulatory functions of the state in the field of water resources." (Wat.Code, §§ 174-175.) In the performance of its adjudicatory functions, the Board has the power to revoke a license to appropriate water if the Board "finds that the licensee has not put the water granted under the license to a useful or beneficial purpose ... or that the licensee has ceased to put the water to such useful or beneficial purpose, or that the licensee has failed to observe any of the terms and conditions in the license." (Id., § 1675.)
To assist it in performing its adjudicatory and regulatory functions, the Board employs numerous attorneys in its office of chief counsel (37 at the time of the trial court proceedings here). Five of those attorneys practice exclusively in the area of water rights. One of those attorneys is Samantha Olson.
In a water right enforcement proceeding (such as the proposed revocation of a license under Water Code section 1675), the Board assigns some members of its staff to serve on an "enforcement team"the role of which is to appear before the Board as a party- and other members of its staff to serve on a "hearing team"the role of which is to assist Board members in conducting the hearing and formulating a decision. A separate attorney is assigned to each team. Members of the enforcement team are screened from inappropriate contact with members of the Board and members of the hearing team by application of the rules against ex parte communications contained in the administrative adjudication provisions of the Administrative Procedure Act. (See Gov.Code, §§ 11430.10-11430.80.)
While the Board's policies properly ensure that its staff attorneys do not perform prosecutorial and adjudicative functions in the same enforcement proceeding, the Board does not have a policy that precludes an attorney from simultaneously, or consecutively, serving on an enforcement team and a hearing team in unrelated enforcement proceedings.
The majority opinion would impose such a requirement on the Board and other departments and agencies of state government. I do not believe this is required by *502 the law nor warranted by any policy considerations. Nor is it practical to do so.
In November 2001, a domestic water supplier in Sacramento County filed a petition with the Board asking the Board to revise its declaration of fully appropriated streams to allow for the filing and processing of an application to appropriate water from the lower American River in Sacramento County, which the Board had previously determined was fully appropriated between July and October each year. In March 2002, the Board issued notice that an evidentiary hearing would be held on the petition in May. That notice identified Olson as the attorney member of the hearing team.[1]
The evidentiary hearing was conducted on May 31 and June 13, 2002, and the Board issued a draft order denying the petition in May 2003. A workshop on the draft order was held in July 2003, and on three occasions between July and October 2003, the Board scheduled closed sessions to deliberate on the proposed order.
Meanwhile, in April 2003, the Board notified the Morongo Band of Mission Indians (Morongo) that the Board was proposing to revoke a license (license No. 659) recently assigned to Morongo that authorized the diversion of water arising from springs in Millard Canyon in Riverside County. In August 2003, after Morongo's predecessor in interest requested a hearing on the proposed revocation, the Board issued a notice of public hearing. In that notice, the Board advised Morongo that Olson would be a member of the enforcement team.
In March 2004, following the issuance of a revised notice of public hearing, Morongo filed a petition to disqualify the enforcement team from any further involvement in the proposed revocation of Morongo's license "on the grounds that their participation in both routine [Board] administrative and other hearing matters where they ... provide advice to the [Board], and their role as a prosecution or enforcement team creates an inappropriate and impermissible appearance of unfairness and bias." In support of its petition, Morongo offered evidence of Olson's service as a member of the hearing team in the lower American River proceeding, in which a final order had not yet been issued.[2]
Board member Gary Carlton, who was serving as the hearing officer in the Morongo proceeding, denied the disqualification petition, concluding that "[u]nder the circumstances of this case, the Morongo Band will not be deprived of a fair and impartial hearing if the enforcement team is allowed to participate in the hearing." I agree.
In this writ proceeding, relying on Quintero v. City of Santa Ana (2003) 114 Cal.App.4th 810, 7 Cal.Rptr.3d 896, the superior court disagreed and concluded that in the area of administrative adjudications, "an attorney may not simultaneously represent both a board and the litigants who appear before it, even on different matters." (Italics added.) Because Olson simultaneously served on the hearing team in the lower American River proceeding and the enforcement team in the Morongo proceeding from at least August 2003 through January 2005, the court concluded the Board abused its discretion in denying Morongo's petition to disqualify her.
The question before us is whether Morongo will be deprived of its due process *503 right to a fair administrative proceeding if Olson is allowed to serve as a member of the enforcement team, in light of the fact that during the initial pendency of the Morongo proceeding she was also serving as a member of the hearing team in an unrelated proceeding involving the American River. I believe the answer to this question is, "no."
It is beyond question that "[w]hen due process requires a hearing, the adjudicator must be impartial." (Haas v. County of San Bernardino (2002) 27 Cal.4th 1017, 1025, 119 Cal.Rptr.2d 341, 45 P.3d 280.) However, "`Bias and prejudice are never implied and must be established by clear averments.'" (Andrews v. Agricultural Labor Relations Bd. (1981) 28 Cal.3d 781, 792, 171 Cal.Rptr. 590, 623 P.2d 151.) "Of course, there are some situations in which the probability or likelihood of the existence of actual bias is so great that disqualification of a judicial officer is required to preserve the integrity of the legal system, even without proof that the judicial officer is actually biased towards a party." (Id. at p. 793, fn. 5, 171 Cal.Rptr. 590, 623 P.2d 151.) "Not only is a biased decisionmaker constitutionally unacceptable but `our system of law has always endeavored to prevent even the probability of unfairness.' [Citations.] In pursuit of this end, various situations have been identified in which experience teaches that the probability of actual bias on the part of the judge or decisionmaker is too high to be constitutionally tolerable. Among these cases are those in which the adjudicator has a pecuniary interest in the outcome and in which he [or she] as been the target of personal abuse or criticism from the party before him [or her]." (Withrow v. Larkin (1975) 421 U.S. 35, 47, fn. omitted, 95 S.Ct. 1456, 1464, 43 L.Ed.2d 712, 723; see also Andrews v. Agricultural Labor Relations Bd., supra, 28 Cal.3d at p. 793, fn. 5, 171 Cal.Rptr. 590, 623 P.2d 151 [noting that cases in which the probability of actual bias require disqualification "include cases in which the judicial officer either has a personal or financial interest, has a familial relation to a party or attorney, or has been counsel to a party"].)
Thus, while "a party's unilateral perception of an appearance of bias cannot be a ground for disqualification" (Andrews v. Agricultural Labor Relations Bd., supra, 28 Cal.3d at p. 792, 171 Cal.Rptr. 590, 623 P.2d 151), the "appearance of bias" that arises in situations where there is an intolerably high probability of actual bias on the part of a decision maker will suffice. As our Supreme Court explained in Haas, a case involving the decision maker's financial interest, "The appearance of bias that has constitutional significance is not a party's subjective, unilateral perception; it is the objective appearance that arises from financial circumstances that would offer a possible temptation to the average person as adjudicator. A procedure holding out to the adjudicator, even implicitly, the possibility of future employment in exchange for favorable decisions creates such a temptation and, thus, an objective, constitutionally impermissible appearance and risk of bias." (Haas v. County of San Bernardino, supra, 27 Cal.4th at p. 1034, 119 Cal.Rptr.2d 341, 45 P.3d 280.)
While some opinions have used the term "appearance of bias" by itself in the due process analysis, thus supporting the suggestion that there has been an "evolution" in the principles of due process since Withrow was decided,[3] I believe Haas makes clear that a constitutionally impermissible appearance of bias exists only when there is a constitutionally impermissible risk of bias. Thus, the term actually identifies a *504 category of cases specifically dealt with in Withrowthose cases in which actual bias has not been shown but where experience teaches that the probability of actual bias is too great to be tolerated.
Here, because there was no proof of actual bias on the part of the Board, the issue is whether an attorney's simultaneous service as an advocate before an administrative tribunal in one adjudicative proceeding and an advisor to the tribunal in another, unrelated adjudicative proceeding poses a constitutionally impermissible risk of actual bias.[4]
In answering that question, the majority opinion seems to ignore "a presumption of honesty and integrity in those serving as adjudicators." (Withrow v. Larkin, supra, 421 U.S. at p. 47, 95 S.Ct. at p. 1464, 43 L.Ed.2d at pp. 723-724.) "[S]tate administrators 'are assumed to be men [and women] of conscience and intellectual discipline, capable of judging a particular controversy fairly on the basis of its own circumstances.'" (Id. at p. 55, 95 S.Ct. at p. 1468, 43 L.Ed.2d at p. 728; see also Haas v. County of San Bernardino, supra, 27 Cal.4th at p. 1025, 119 Cal.Rptr.2d 341, 45 P.3d 280 ["adjudicators challenged for reasons other than financial interest have in effect been afforded a presumption of impartiality"].)
The Supreme Court's decision in Withrow provides guidance in how to address the issue presented here. In Withrow, the question was whether it was a violation of due process for an administrative agency to adjudicate a matter it had investigated. There, the state examining board responsible for licensing physicians was authorized by statute to both investigate and hear disciplinary matters against licensed physicians. The board held an investigative hearing at which numerous witnesses testified, then proposed to hold a contested hearing to decide whether to discipline the physician. A three-judge district court panel concluded that for the board to discipline the physician "`at its own contested hearing on charges evolving from its own investigation would constitute a denial to him of his rights to procedural due process.'" (Withrow v. Larkin, supra, 421 U.S. at pp. 39-43, 95 S.Ct. at pp. 1460-1462, 43 L.Ed.2d at pp. 718-721.)
On review, the Supreme Court rejected "the bald proposition ... that agency members who participate in an investigation are disqualified from adjudicating." (Withrow v. Larkin, supra, 421 U.S. at p. 52, 95 S.Ct. at p. 1467, 43 L.Ed.2d at p. 726.) According to the court, "The incredible variety of administrative mechanisms in this country will not yield to any single organizing principle." (Ibid 421 U.S. at pp. 52, 95 S.Ct. at pp. 1467, 43 L.Ed.2d at pp. 726-727.) The court concluded that "[t]he processes utilized by the Board ... do not in themselves contain an unacceptable risk of bias.... No specific foundation has been presented for suspecting that the Board had been prejudiced by its investigation or would be disabled from hearing and deciding on the basis of the evidence presented at the contested hearing. The mere exposure to evidence presented in nonadversary investigative procedures is insufficient in itself to impugn the fairness of the Board members at a later adversary hearing." (Id at pp. 54-55, fn. omitted, 95 S.Ct. at pp. 1468-1469, 43 L.Ed.2d at p. 728.) The court went on to note, however, that even though "the combination of investigative and adjudicative functions does not, without more, constitute a due process *505 violation," nothing "preclude[s] a court from determining from the special facts and circumstances present in the case before it that the risk of unfairness is intolerably high." (Id. at p. 58, 95 S.Ct. at p. 1470, 43 L.Ed.2d at p. 730.)
In this case both the superior court and the majority opinion specifically rely on Quintero v. City of Santa Ana, supra, 114 Cal.App.4th 810, 7 Cal.Rptr.3d 896; however, Quintero itself relied heavily on two other decisions-Howitt v. Superior Court (1992) 3 Cal.App.4th 1575, 5 Cal.Rptr.2d 196 and Nightlife Partners, Ltd v. City of Beverly Hills (2003) 108 Cal.App.4th 81, 133 Cal.Rptr.2d 234. I do not believe the result in Quintero was compelled by these cases and, in fact, has led us astray.
Howitt, which the majority opinion refers to as "the seminal case," like this case, involved an attempt to disqualify an attorney in an administrative adjudication. In Howitt, however, the attorney whose disqualification was sought was the attorney advising the administrative agency. Specifically, in Howitt a deputy sheriff dissatisfied with a personnel decision sought review from the county's employment appeals board, "a quasi-independent administrative tribunal ... charged with adjudicating certain disputes between the county and county employees." (Howitt v. Superior Court, supra, 3 Cal.App.4th at p. 1578, 5 Cal.Rptr.2d 196.) When the deputy learned the county would be represented at the hearing by a deputy county counsel and the Board would be advised by the county counsel, the deputy "requested the county counsel's office disqualify itself from advising the Board with regard to the administrative hearing." (Ibid.) County counsel refused, the deputy unsuccessfully sought a writ from the superior court, and the matter came up to the appellate court on a petition for writ relief. (Ibid.)
The majority perceived a problem because of the combination of "advocacy and decisionmaking roles." (Howitt v. Superior Court, supra, 3 Cal.App.4th at p. 1585, 5 Cal.Rptr.2d 196, italics omitted.) "By definition, an advocate is a partisan for a particular client or point of view. The role is inconsistent with true objectivity, a constitutionally necessary characteristic of an adjudicator. [Citations.] Here, as part of an adversary process, the county counsel will be asked to advise the Board about legal issues which Board members feel are relevant in deciding whether one of his subordinates wins or loses the case. To allow an advocate for one party to also act as counsel to the decision maker creates the substantial risk that the advice given to the decision maker, `perhaps unconsciously' ... will be skewed." (Ibid.) Ultimately, the majority concluded performance of both the advocate's and the adviser's roles "by the same law office is appropriate only if there are assurances that the adviser for the decision maker is screened from any inappropriate contact with the advocate." (Id. at p. 1586, 5 Cal.Rptr.2d 196.) Since the record contained "no evidence of any procedure in the county counsel's office to screen lawyers who advise the appeals board from the advocacy functions of the office," the majority denied the deputy's writ petition without prejudice. (Id. at p. 1587, 5 Cal. Rptr.2d 196.)
Justice Benke concurred with the majority's denial of the writ petition, but otherwise disagreed with the majority's analysis. Applying the principles and reasoning of Withrow, Justice Benke expressed the view that the "dual representation by the county counsel's office has not been shown to carry with it the unacceptable risk of actual bias on the part of the Board such that that office must be precluded from dual representation." (Howitt v. Superior *506 Court, supra, 3 Cal.App.4th at pp. 1587, 1591, 5 Cal.Rptr.2d 196.) In her view, "dual representation is permissible until in a given case [the risk of] actual bias or conflict is so intolerably high as to make such dual representation impermissible." (Id at pp. 1592-1593, 5 Cal.Rptr.2d 196.) In the absence of any claim by the deputy that "inadequate screening procedures led to an unconstitutional risk of bias or conflict on the part of the Board," Justice Benke "would assume adequate screening provisions are provided within the office of county counsel." (Id at p. 1592, 5 Cal. Rptr.2d 196.)
Keeping in mind that the touchstone for the due process analysis in a case like Howitt and the one before us is an impartial decision maker, at its broadest the Howitt majority's decision stands for the proposition that, absent adequate screening, there is an unacceptably high risk that an administrative board will render a biased decision if-in the same administrative adjudication-the board is advised by an attorney from the same office as the attorney advocating one of the positions before the board. As to what constitutes adequate screening, the Howitt majority suggests in a footnote that screening "should be sufficient if the lawyer advising the Board has no potential involvement in or responsibility for the preparation or presentation of the case." (Howitt v. Superior Court, supra, 3 Cal.App.4th at p. 1587, fn. 4, 5 Cal.Rptr.2d 196.) The idea appears to be that if the attorneys truly operate independently of each other regarding a particular administrative matter, then their membership as part of the same office does not pose an unacceptable risk the administrative board will render a biased decision based on biased advice. Of course, this means an unconstitutional risk of actual bias is not presented under Howitt simply because one of the advocates before an administrative board is employed in the same law office as an adviser to the board. The Howitt majority's concern was that "an advocate for one party [not] act as counsel to the decision maker." (Howitt v. Superior Court, supra, 3 Cal.App.4th at p. 1585, 5 Cal. Rptr.2d 196.) As long as sufficient separation between the two attorneys is maintained, the mere fact that the adviser might have a natural tendency to favor his cohort's (or, as in Howitt, his subordinate's) position in advising the Board does not present a due process violation.
However, Howitt has no direct bearing here because the Board in this case has screening procedures in place to prevent ex parte communications between members of the enforcement team, like Olson, and members of the hearing team and the Board itself. Thus, there was no due process violation under Howitt here.
Nightlife Partners actually adds very little to Howitt. In Nightlife Partners, the operators of an adult cabaret sought to renew their adult entertainment regulatory permit with the city. (Nightlife Partners, Ltd. v. City of Beverly Hills, supra, 108 Cal.App.4th at p. 84, 133 Cal.Rptr.2d 234.) At the time, the parties were in litigation in federal court related to the city's regulation of adult entertainment, and Assistant City Attorney Terence Boga was one of the attorney's for the city in that matter. Boga also represented the city in responding to the permit renewal application and in that regard took the position the application was incomplete. When the plaintiffs filed an administrative appeal of the city's denial of their application, Boga served as the advisor to the hearing officer. (Id. at pp. 84-85, 133 Cal. Rptr.2d 234.)
After the hearing officer denied the appeal, the plaintiffs succeeded in obtaining writ relief from the superior court. On *507 appeal, the appellate court affirmed, concluding the plaintiffs were denied their due process right to an unbiased decision maker. In the court's view, an "objectionable overlapping of the role of advocate and decision maker occurred when Boga acted as both an advocate of City's position and as adviser to the supposedly neutral decision maker. It is true that the official role of City's advocate during the review of City's decision to deny the application was filled by [another city attorney], not Boga. However, Boga had been City's advocate in connection with the decision to deny the application. Thus, Boga's presence as [the hearing officer's] adviser was the equivalent of trial counsel acting as an appellate court's adviser during the appellate court's review of the propriety of a lower court's judgment in favor of that counsel's client. It requires no citation of authority exactly on all fours with this fact pattern in order to justify the conclusion that Boga's role as adviser to the decision maker violated petitioners' right to due process." (Nightlife Partners, Ltd, v. City of Beverly Hills, supra, 108 Cal.App.4th at pp. 94-95, 133 Cal.Rptr.2d 234.)
Like Howitt, Nightlife Partners has no direct bearing here because, unlike Boga, Olson was not serving on both the enforcement team and the hearing team in this case.
That brings us back to Quintero. Quintero involved an employee of the Santa Ana Police Department who was fired for having sex with another employee on the job. (Quintero v. City of Santa Ana, supra, 114 Cal.App.4th at p. 812, 7 Cal. Rptr.3d 896.) Following an administrative hearing in September 2000, the Santa Ana Personnel Board upheld the termination, and the employee brought a writ proceeding arguing his due process rights had been violated "because a deputy city attorney [Halford who] represented [the City] before the Board ha[d] also acted as counsel for the Board" in other matters. (Ibid.) Division Three of the Fourth Appellate District reversed the trial court's denial of the employee's writ petition, concluding "there was a clear appearance of bias and unfairness at the administrative hearing."[5](Ibid.)
After discussing Howitt and Nightlife Partners, the Quintero court noted there was "no evidence that Halford acted as both the Board's legal adviser and in a prosecutory function in this case. However, Halford's other interactions with the Board give the appearance of bias and unfairness and suggest the probability of his influence on the Board." (Quintero v. City of Santa Ana, supra, 114 Cal.App.4th at p. 814, 7 Cal.Rptr.3d 896.) The court then proceeded to detail the attorney's involvement as adviser to the Board, which can be summarized as follows:
(1) At the same time Quintero's matter was pending before the board, Halford represented the police department before the board in hearings involving another employee (Cabrera). When Cabrera sought writ relief in the superior court, Halford appeared to oppose it. Documents in that case showed Halford "as counsel for the City, the police department, and the Board."
(2) A superior court judgment from 1997 likewise showed Halford as representing the board and the city.
(3) At a board hearing in March 1996, Halford had developed a format for the *508 board in developing and adopting written findings, conclusions, and recommendations.
(4) In 1997, Halford reported to the board the effective date for revisions to the board's procedural rules for hearing appeals, distributed draft revisions, made changes requested by the board, and advised the board of the procedure to adopt the new rules.
(5) In November 1998, Halford was listed as the board's legal adviser and introduced a new board secretary to the members of the board.
(6) In October 1999, the board directed Halford to initiate the process to amend the municipal code to address two board procedural issues. (Quintero v. City of Santa Ana, supra, 114 Cal.App.4th at pp. 815-816, 7 Cal.Rptr.3d 896.)
Based on these incidents, the court concluded, "This is enough to show the probability of actual bias. It would only be natural for the Board members, who have looked to Halford for advice and guidance, to give more credence to his arguments when deciding plaintiffs case. Whether or not they actually did is irrelevant; the appearance of unfairness is sufficient to invalidate the hearing." (Quintero v. City of Santa Ana, supra, 114 Cal.App.4th at p. 816, 7 Cal.Rptr.3d 896.) Later the court wrote, "For the Board to allow its legal adviser to also act as an advocate before it creates a substantial risk that the Board's judgment in the case before it will be skewed in favor of the prosecution.... [¶] ... [D]ual representation is not barred so long as there is an adequate separation of the two roles and the attorneys performing them. [Citation.] What is inappropriate is one person simultaneously performing both functions. That is not to say that once a city attorney has appeared in an advisory role, he or she cannot subsequently act as a prosecutor, or vice versa. But the attorney may occupy only one position at a time and must not switch roles from one meeting to the next. [¶] We do not hold that the frequent contacts between Halford and the Board are themselves sufficient to demonstrate the probability of actual bias. Rather, our decision is based on the totality of the circumstances." (Quintero v. City of Santa Ana, supra, 114 Cal.App.4th at p. 817, 7 Cal. Rptr.3d 896.)
Undoubtedly, Quintero is an extension of Howitt and Nightlife Partners because, as the court noted, Halford did not act as prosecutor and advisor in the same case. The question is what proposition, exactly, does Quintero stand for, and is that proposition valid under the underlying constitutional principles?
The trial court read Quintero as "establishing] a bright-line rule that one attorney may not occupy more than one position at one time," with a "totality of the circumstances" test applying in other circumstances, i.e., successive occupation of advisory/advocacy roles. This is an admirable attempt to make sense of the Quintero court's somewhat wandering analysis, but it creates certain problems. First, as the trial court noted, "it does not appear there was any direct evidence establishing that the deputy city attorney [in Quintero ] served as an adviser to the board at the same time that the attorney was appearing before the board as an advocate." Thus, in the trial court's view, Quintero was a totality-of-the-circumstances case, not governed by the "bright-line rule" the case supposedly established. Of course, that would make the bright-line rule dicta.
Second, to the extent Quintero cites a basis for its bright-line rulethat it is "inappropriate [for] one person simultaneously [to] perform[] both [advocacy and advisory] functions"that basis is *509 Howitt. (See Quintero, supra, 114 Cal. App.4th at p. 817, 7 Cal.Rptr.3d 896, citing Howitt v. Superior Court, supra, 3 Cal.App.4th at pp. 1586-1587, 5 Cal. Rptr.2d 196.) While this is an accurate statement of the law under Howitt (and Nightlife Partners), it is accurate only to the extent the person is simultaneously performing both functions in the same administrative matter. Neither Howitt nor Nightlife Partners involved simultaneous representation in different administrative matters, and therefore to the extent the Quintero court purported to extend their holdings to that context, it did so without any substantive analysis.
Of course, that becomes the main problem in the majority opinion because, like the trial court, it applies Quintero's brightline rule without consideration of the fact that the rule derives from cases involving simultaneous performance of both functions in the same matter. Thus, neither Quintero nor the majority opinion adequately explains why an extension of the rule to cases involving simultaneous performance of both functions in different matters is justified. Although not actually recognizing that an extension of the rule is involved, the majority does indicate that the reason behind the result is "`[t]he chance that the Board will show preference toward [advisory counsel].'" (Maj. opn. ante, at p. 497.) Later the majority also states, "Allowing an attorney from the administrative board to act both as prosecutor and the decision maker's advisor in proceedings that overlap necessarily puts a licensee facing prosecution at an unfair disadvantage. Human nature being what it is, the temptation is simply too great for the Water Board members, consciously or unconsciously, to give greater weight to Attorney Olson's arguments by virtue of the fact she also acted as their legal advisor, albeit in an unrelated matter." (Id., at p. 500.)
The problem with this rationale (besides that it fails to account for the presumption of honesty and integrity in those serving as adjudicators) is that it applies far beyond the situation where an attorney is simultaneously acting as an advocate before an administrative board and an adviser to the board in an unrelated matter. Imagine, if you will, an attorney advising an administrative board on one matter, then, several months later, advocating a matter before the board. Is there not, just as in the case of simultaneous performance of both functions, a chance the board will show preference toward the advocate who previously acted as the board's advisor? Is that chance less than in the case of simultaneous performance of both functions? If so, why? And if there is no rational basis for distinguishing between the two situations, then why does not Quintero's bright-line rule of disqualification apply to successive performance of both functions?
In short, under the majority opinion's rationale, it appears to me that no one who has ever advised an administrative board in an adjudicative matter can ever be allowed to advocate before that board in another such matter because of the risk the board will favor their position simply because they have advised the board. But the rationale goes farther than that. If the risk that a board will favor the position of a former (or current) advisor is too high, then is it permissible at all for a board to have its own lawyers advocate before it, whether they have ever advised the board? Why is not the risk that the board will favor its own employees impermissible?
What I see is a rationale that would require complete separation between advocacy and adjudication in administrative tribunals. I do not believe that result is required by the due process clause. Under *510 the principles of Withrow, absent proof of actual bias disqualification may be required only in situations where experience teaches that the probability of actual bias on the part of the decision maker is too high to be constitutionally tolerable. Thus, the situations to which the majority opinion's rationale applies must be comparable to situations such as when an adjudicator has a pecuniary interest in the outcome. I do not see an administrative board's employment of a lawyer to advocate a particular position adversely to an interested party appearing before the board as comparable to an adjudicator's pecuniary interest. The same conclusion applies to a person who, without more, serves as an advisor to a board in an unrelated matter. While certainly there is a risk a board will not be unbiased, that risk, in my view, is not so great that the practice must be forbidden to ensure a fair proceeding, given the "presumption of honesty and integrity in those serving as adjudicators."
In summary, even if the bright-line rule from Howitt and Nightlife Partners, via Quintero, is appropriate, it does not extend to situations where an attorney serves as an advocate and an adviser in different matters, even simultaneously. Rather, in such situations, the question as to whether there is evidence of actual bias or an unconstitutional probability of bias must be based on analysis of the totality of the circumstances, keeping in mind the presumption that administrative adjudicators will judge a particular controversy fairly on the basis of its own circumstances.
There is no such evidence here. In contrast to Quintero, where it appears the deputy city attorney regularly advised the administrative board on various matters over a period of years, here the evidence showed that in her four years of employment as an attorney with the Board, Olson had on three previous occasions served as a member of an enforcement team but only once beforein the lower American River proceedinghad served on a hearing team. Furthermore, that proceeding was ultimately terminated at the request of the initiating party without a decision by the Board before the present matter ever proceeded to a hearing.
Under these circumstances, I conclude no due process violation has been shown and therefore the trial court erred in determining that the Board abused its discretion in denying Morongo's request to disqualify Olson. I would reverse the judgment.
NOTES
[1] Undesignated statutory references are to the Government Code.
[2] "Not only is a biased decisionmaker constitutionally unacceptable but `our system of law has always endeavored to prevent even the probability of unfairness.' [Citations.] In pursuit of this end, various situations have been identified in which experience teaches that the probability of actual bias on the part of the judge or decisionmaker is too high to be constitutionally tolerable." (Withrow, supra, 421 U.S. at p. 47, 95 S.Ct. at p. 1464, 43 L.Ed.2d at p. 723.)
[3] The California Supreme Court has cautioned that "very limited guidance ... can generally be drawn from the fact that the Legislature has not enacted a particular proposed amendment to an existing statutory scheme." (Marina Point, Ltd. v. Wolfson (1982) 30 Cal.3d 721, 735, fn. 7, 180 Cal.Rptr. 496, 640 P.2d 115.) Even less weight should be given to the fact that the Legislature was never presented with, let alone considered, an amendment to the APA that would incorporate the holding of Quintero.
[4] Morongo's motion requesting judicial notice of the Attorney General's amicus curiae brief filed in Quintanar is granted. (Evid.Code, §§ 452, 459.)
[1] Apparently because the matter was not deemed prosecutorial in nature, the hearing notice did not identify any enforcement team.
[2] Ultimately, the petition in that proceeding was withdrawn, and the Board closed the matter in January 2005.
[3] The majority opinion seems to adopt this "evolution" theory.
[4] Even though this case involves an attempt to disqualify the attorney serving as the prosecutor in the proceeding, rather than the actual decision maker-the Board itself-the bias at issue remains that of the decision maker.
[5] As I have already noted, a mere appearance of bias is not sufficient to violate due process (and does not require disqualification). I will presume the Quintero court understood this as well and that by "appearance of bias" what the court really meant was an unconstitutional probability of actual bias.