[No. G031275. Fourth Dist., Div. Three. Dec. 23, 2003.]

RAUL QUINTERO, Plaintiff and Appellant, v.
CITY OF SANTA ANA et al., Defendants and Respondents.

## COUNSEL

Goldwasser & Glave, Charles A. Goldwasser and Corey W. Glave for Plaintiff and Appellant.

Joseph W. Fletcher, City Attorney, Jose Sandoval and Denah H. Hoard, Assistant City Attorneys, for Defendants and Respondents.

## OPINION

**RYLAARSDAM, J.**—Plaintiff Raul Quintero appeals from a judgment denying his petition for writ of mandate to reverse an order whereby his employment with defendant City of Santa Ana (City) was terminated. He challenges the validity of his termination on several grounds, including an assertion his administrative hearing before the Santa Ana Personnel Board (Board) violated due process. The argument is based on a claim of bias because a deputy city attorney that represented defendants before the Board has also acted as counsel for the Board. We find there was a clear appearance of bias and unfairness at the administrative hearing and reverse and remand on that basis.

### FACTS

Plaintiff was a nonsworn detention officer employed by the Santa Ana Police Department. In 2000 he was discharged for "repeated acts of sexual intercourse in the police facility with a female detention officer while on duty and in uniform." Plaintiff filed an appeal with Board. After a hearing in September 2000, the Board upheld the termination. Plaintiff filed a petition for writ of mandate, claiming, among other things, that defendants failed to provide him with a fair hearing because the assistant city attorney "prosecuting the administrative case . . . concurrently represented the [Board] in civil actions and . . . had appeared . . . as the legal representative for the [Board]." The court denied the petition, and plaintiff appealed. Other facts are set out in the discussion as relevant.

### DISCUSSION

Plaintiff contends the hearing before the Board was unfair. Specifically, he asserts the Board was biased because counsel for defendants at the hearing, Deputy City Attorney Hugh Halford, had at times also acted as counsel for the Board. Plaintiff further complains that in ruling against him on that claim, the trial court erred by requiring that he prove actual bias on the part of the Board. It is unclear from the record what standard the court imposed. However, we review the result, not the reasoning. (*D'Amico v. Board of Medical Examiners* (1974) 11 Cal.3d 1, 18–19 [112 Cal.Rptr. 786, 520 P.2d 10].)

██ In an administrative action, procedural due process entitles a party to a hearing "before a reasonably impartial, noninvolved reviewer . . . ."

(*Williams v. County of Los Angeles* (1978) 22 Cal.3d 731, 736–737 [150 Cal.Rptr. 475, 586 P.2d 956].) Absent actual bias, "[t]he test of the ability of the administrat[or] to act is whether in light of the particular facts 'experience teaches that the probability of actual bias on the part of the . . . decisionmaker is too high to be constitutionally tolerable.' [Citation.]" (*Mennig v. City Council* (1978) 86 Cal.App.3d 341, 350 [150 Cal.Rptr. 207].)

Defendants assert plaintiff's claim is a " ' "unilateral perception of an appearance of bias" ' " which " ' "cannot be a ground for disqualification . . . ." ' " (*Gai v. City of Selma* (1998) 68 Cal.App.4th 213, 220 [79 Cal.Rptr.2d 910].) It argues there was neither actual bias nor the probability of bias because Halford never represented both defendants and the Board in this case. (*Id.* at p. 220.) While we agree with the latter statement, the record reflects more than a unilateral perception of bias.

■ Preliminarily, we agree that in the context of administrative law, there is no absolute prohibition against the city attorney's office representing both the Board and other city agencies such as the police department. Provided certain guidelines are met, the city attorney's office may "act[] as an advocate for one party in a contested hearing while at the same time serving as the legal adviser for the decision maker." (*Howitt v. Superior Court* (1992) 3 Cal.App.4th 1575, 1579 [5 Cal.Rptr.2d 196].) But, "[p]erformance of both roles . . . is appropriate only if there are assurances that the adviser for the decision maker is screened from any inappropriate contact with the advocate." (*Id.* at p. 1586.) We agree that defendants did not meet their burden of showing the required separation.

In *Nightlife Partners, Ltd. v. City of Beverly Hills* (2003) 108 Cal.App.4th 81 [133 Cal.Rptr.2d 234] (*Nightlife*), the court affirmed a decision that the plaintiff's proceeding before the defendant's administrative hearing officer was unfair and had violated due process, thus warranting a new hearing. The plaintiff had submitted an application to renew its business permit. An assistant city attorney, Boga, advised the defendant the application was incomplete, and on his suggestion, the defendant refused to renew the plaintiff's license. At the hearing on the plaintiff's administrative appeal, Boga acted as counsel to the hearing officer; a different lawyer represented the defendant. Before the hearing began, the hearing officer stated on the record that Boga would be " 'advising me and assisting me as necessary in these proceedings.' " (*Id.* at p. 85.)

When the plaintiff's administrative appeal was denied, it filed a writ petition in the superior court. In granting the petition, the trial court found that Boga's active participation in both the permit process and the administrative hearing "constituted 'actual bias.' " (*Nightlife, supra,* 108 Cal.App.4th at

p. 86.) The Court of Appeal affirmed, holding that "due process in an administrative hearing also demands an *appearance* of fairness and the absence of even a *probability* of outside influence on the adjudication." (*Id.* at p. 90.) The court acknowledged that another city attorney represented the defendant during the administrative hearing, but the fact Boga had advised the defendant prior to the hearing "was a clear *appearance* of unfairness and bias" sufficient to justify the trial court's decision requiring a new hearing. (*Id.* at p. 94.)

The law governing due process in administrative proceedings has been evolving over the last several decades. *Howitt v. Superior Court, supra,* 3 Cal.App.4th 1575, which contains an instructive review of its development into the 1990's, notes that earlier cases set out "a general proposition . . . recogniz[ing] a due process entitlement to an impartial decision maker but conclud[ing] that overlapping functions do not amount to a constitutional violation absent specific evidence of bias." (*Id.* at p. 1580.) *Howitt* found this proposition troubling, however, where, as in our case, "the administrative agency chooses to utilize the adversary model in large part but modifies it in a way which raises questions about the fairness of the resulting procedure." (*Id.* at p. 1581.)

There, in facts similar to those here, the plaintiff, a deputy sheriff appealing his transfer and suspension, sought to disqualify the county counsel's office from representing the sheriff's department and advising the personnel board at the hearing. The court refused to do so and remanded the case to give county counsel the opportunity to show the functions of the two attorneys were sufficiently separated. (*Howitt v. Superior Court, supra,* 3 Cal.App.4th at p. 1587.)

Eleven years later, *Nightlife* traced the more recent developments, including the rising "concern over too close a connection between an advocate and the decisionmaker" which led to enactment of several state administrative procedure statutes, including California's Administrative Procedure Act (Gov. Code, §§ 11340–11529) (APA). (*Nightlife, supra,* 108 Cal.App.4th at pp. 91, 92.) While noting the APA does not govern local administrative hearings, *Nightlife* observed that its provisions exemplify the elements of a fair procedure. (*Id.* at p. 91.) One important APA principle, to eliminate "even a probability of outside influence on administrative hearings," requires that "the *prosecutory* . . . aspects of administrative matters must be adequately separated from the adjudicatory function. [Citation.]" (*Ibid.*)

Here, there is no evidence that Halford acted as both the Board's legal adviser and in a prosecutory function in *this* case. However, Halford's other interactions with the Board give the appearance of bias and unfairness and suggest the probability of his influence on the Board.

One example is Halford's dual role in a matter involving the police department's termination of Michael Cabrera. This case was before the Board for several years, including the time period during which plaintiff's matter was pending. Halford represented the police department in the hearings before the Board. After receiving an unsatisfactory decision, Cabrera filed a writ petition in the superior court; Halford appeared to oppose it. The judgment and other documents in the record list Halford as counsel for the City, the police department, and the Board in hearings held in 1999 and June 2000. At the conclusion of matters in superior court, the case went back to the Board for further hearings. This occurred at the same time plaintiff's case was being tried before the Board. In fact, at the meeting where the Board adopted the findings of fact in this case, it also began another hearing in the Cabrera matter.

Similarly, in a case involving another employee, Barry Pollitt, a 1997 superior court judgment shows Halford represented "Respondent[] Santa Ana Personnel Board and Real Party in Interest City of Santa Ana . . . ."

Defendants argue the city attorney did not really represent the Board in either *Cabrera* or *Pollitt* in the trial court. They contend the statements of appearances in those cases were erroneous and should have shown Halford represented only the City. They further assert that although the Board is sometimes named as a party in superior court writ petitions, the actions really only involve the City and the employee.

This does not persuade. Although these claims were raised by defendants in discovery responses and arguments below, they had no evidentiary support. Therefore, we will not rely on them to contradict the written documents.

Moreover, there is additional evidence to support the probability of the Board's bias. The record first mentions Halford appearing before the Board in March 1996. At that meeting, although listed as a deputy city attorney and despite the presence of another attorney shown as the "Board Legal Advisor," Halford had "developed a format to follow when considering development and adoption of Written Findings, Conclusions and Recommendations . . . ."

In March 1997, there is no listing of an attorney appearing to represent the Board; Halford is shown as the police legal adviser. However, Halford reported to the Board the effective date for revisions of "Personnel Board Procedural Rules for Hearing Appeals." Over the next several months, although never designated as Board adviser in the minutes, Halford distributed the draft revisions. During discussions of the proposed changes, he "expressed the City's position and rationale." But after discussions concluded, he made requested changes after "the Board conveyed to [him] the approach

it preferred." He also advised the Board of the procedure to adopt the new rules, and reiterated that once adopted, they would not apply to appeals already filed. It is reasonable to infer Halford not only appeared as the City's representative, but also, at least indirectly, acted on behalf of the Board.

The last page of the proposed revised rules is significant. It contains a signature line for the Board chairperson to sign signifying adoption of the rules. It also contains a signature line for Halford as deputy city attorney to approve as to form. There is no place designated for approval by anyone else. There is no logical reason why the attorney for the police department would need to approve the form of the Board's new rules. Again, this creates the appearance Halford was acting on behalf of the Board.

In November 1998 Halford had been listed as the Board's legal adviser. At that meeting, which according to the minutes was relatively brief, Halford introduced a new board secretary to themembers of the Board. This is a function one would expect to be undertaken by a Board adviser, as opposed to an attorney representing a party.

On another occasion, in October 1999, again, although Halford is not shown in the minutes as the legal adviser, "[t]he Board directed [him] to initiate the process necessary to amend the Santa Ana Municipal Code in order to address two Personnel Board procedural issues." This, too, is a function more appropriately performed by the Board legal adviser instead of the attorney ostensibly representing the police department in a prosecutory role.

It is notable that several Board members who heard plaintiff's case, including the chairperson, were members of the Board in 1998 and 1999 when Halford was revising Board rules and procedures and giving advice as to their effect and effective dates. The chairperson served continuously from at least as early as Halford's first meeting in 1996, when Halford presented a format he had developed for drafting and adopting findings of fact. Halford clearly had an ongoing relationship with the Board beyond just appearing as counsel for a party.

This is enough to show the probability of actual bias. It would only be natural for the Board members, who have looked to Halford for advice and guidance, to give more credence to his arguments when deciding plaintiff's case. Whether or not they actually did is irrelevant; the appearance of unfairness is sufficient to invalidate the hearing. (*Nightlife, supra,* 108 Cal.App.4th at p. 94.)

In reaching our decision, we are not attributing bad faith to defendants, the Board, or Halford. But given the frequent contact between Halford and

members of the Board, it is only natural for them to have developed a relationship. That is precisely the reason defendants must exercise vigilance and caution, to ensure not only fairness, but the appearance of fairness. It appears the lines distinguishing Halford's roles of advocate and adviser have become blurred.

"[A] prosecutor, by definition, is a partisan advocate for a particular position or point of view. [Citation.] Such a role is inconsistent with the objectivity expected of administrative decision makers. [Citation.] Accordingly, to permit an advocate for one party to act as the legal adviser for the decision maker creates a substantial risk that the advice given to the decision maker will be skewed [citation], particularly when the prosecutor serves as the decision maker's adviser in the same or a related proceeding." (*Nightlife, supra,* 108 Cal.App.4th at p. 93.)

For the Board to allow its legal adviser to also act as an advocate before it creates a substantial risk that the Board's judgment in the case before it will be skewed in favor of the prosecution. The chance that the Board will show a preference toward Halford, even " 'perhaps unconsciously' " is present and unacceptable. (*Howitt v. Superior Court, supra,* 3 Cal.App.4th at p. 1585.)

Plaintiff argues that the city attorney's concurrent representation of both the Board and litigants who appear before it "continues to cause an ethical and legal conflict of interest . . . ." We reject this claim as overly broad and contrary to law. As noted in *Howitt v. Superior Court, supra,* 3 Cal.App.4th 1575, dual representation is not barred so long as there is an adequate separation of the two roles and the attorneys performing them. (*Id.* at pp. 1586–87.) What is inappropriate is one person simultaneously performing both functions. That is not to say that once a city attorney has appeared in an advisory role, he or she cannot subsequently act as a prosecutor, or vice versa. But the attorney may occupy only one position at a time and must not switch roles from one meeting to the next.

We do not hold that the frequent contacts between Halford and the Board are themselves sufficient to demonstrate the probability of actual bias. Rather, our decision is based on the totality of circumstances. Because we reverse on this basis, we need not consider the other arguments plaintiff raised on appeal.

## DISPOSITION

The judgment is reversed and the case is remanded to the superior court with directions to enter a new judgment granting appellant's petition for writ of mandate and ordering a new hearing. Appellant is awarded his costs on appeal.

Sills, P. J., and Moore, J., concurred.

Respondents' petition for review by the Supreme Court was denied March 24, 2004.