Filed 10/28/16

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| DRAKES BAY OYSTER COMPANY,<br><br>　　Plaintiff and Appellant,<br><br>v.<br><br>CALIFORNIA COASTAL<br>COMMISSION,<br><br>　　Defendant and Respondent. | A142820<br><br>(Marin County<br>Super. Ct. Nos. CIV 1301469,<br>　1301472) |

　　Plaintiff and appellant Drakes Bay Oyster Company (Company) appeals from the lower court's denial of its motion for a preliminary injunction and to disqualify certain California Coastal Commission (Commission) staff members from participating in the litigation below, whether as the Commission's client representatives or counsel, and from communicating confidentially with the Commission regarding the litigation.  The Company contends that, as a matter of law, these staff members' participation in the litigation after they advocated for enforcement orders against the Company in Commission proceedings violates the Company's due process rights as articulated in cases such as *Morongo Band of Mission Indians v. State Water Resources Control Bd.* (2009) 45 Cal.4th 731, 739–740 (*Morongo*).  We conclude that the cases on which the Company relies do not support its position.  Those cases address a party's due process right to a fair and impartial decision maker in quasi-judicial administrative proceedings and require separation of prosecutorial functions from advisory functions during such proceedings.  The cases do not concern litigation conduct of an administrative agency and its staff when the agency is a

1

party to that litigation. In that context, the agency is not acting as a decision maker, nor can its staff's assistance affect the fairness and impartiality of the decision maker, which is the court. The Company's argument that the Commission might in the future take further enforcement actions is too speculative and involves circumstances too uncertain to deprive it now of its staff's assistance in the litigation. For these reasons, we conclude that the Company has not shown a likelihood of prevailing on the merits of its claim and affirm the superior court's order.

## BACKGROUND

In 2004 the Company purchased the assets of the Johnson Oyster Company (Johnson) and took over operation of a 1,060-acre mariculture facility in and adjacent to Drakes Estero, a series of estuarial bays located in Point Reyes National Seashore in Marin County, California. (*Drakes Bay Oyster Co. v. Jewell* (9th Cir. 2014) 747 F.3d 1073, 1078–1079.)

The Company's Drakes Estero facility is located on a site that is owned by the federal government and within the Commission's permitting jurisdiction. Johnson, and then the Company, operated this facility under a 40-year agreement with the federal government that expired in 2012. The Secretary of the Interior decided not to renew the agreement, and the Company challenged that decision in court. The district court denied the Company's request for a preliminary injunction, which the Ninth Circuit affirmed in *Drakes Bay Oyster Co. v. Jewell*, *supra*, 747 F.3d 1073. According to the Commission, in 2014 the Company and the federal government entered into a consent decree pursuant to which the Company closed its facility. Regardless, this litigation has continued.

In 2003, before the Company began operating the facility, the Commission issued an order to Johnson requiring that it cease and desist engaging in unpermitted development on the site. After the Company took over the facility, it and the Commission began addressing development issues.

In 2006, the Company submitted an application to the Commission seeking a permit for the Company's operations and improvements to its retail operations. However, the Commission repeatedly found the Company's application to be incomplete.

Subsequently, the Commission issued a consent order in which the Company agreed to stop certain development. However, the parties continued to have unresolved issues. In late 2012, the Commission sent the Company a notice of intent to commence cease and desist and restoration order proceedings regarding unpermitted development by the Company.

In February 2013, the Commission held a hearing in these enforcement proceedings. Commission staff Lisa Haage, Heather Johnston and Alex Helperin (collectively, the Enforcement Staff) advocated that the Commission issue certain orders. As stated by Helperin in his April 2013 declaration filed in the litigation below: Helperin served as Senior Staff Counsel for the Commission, having served as staff counsel since 2001, represented the Commission's enforcement division since 2006 and worked on issues related to the Company since 2007. Haage was an attorney who was Chief of Enforcement for the Commission. Johnston was the Commission's Northern California Enforcement Supervisor, having previously served as a statewide enforcement analyst. Apparently, Johnston too is an attorney.

The Enforcement Staff's recommended orders addressed in what was described as unpermitted "development undertaken or maintained by [the Company] in violation of the [California] Coastal Act [of 1976 (Pub. Res. Code, § 3000 et seq.)], some of which is also a violation of orders previously issued for the facility." This included "the operation of offshore aquaculture facilities; the processing and sale of the product of aquaculture operations and other related operations; construction, installation, and alteration of structures; landform alteration; and additional unpermitted development undertaken inconsistent" with the consent order, "including installation of unpermitted development, the presence of boat traffic in the lateral sand bar channel near the mouth of Drakes Estero

3

during a seasonal restriction established for harbor seal pupping sites; and discharge of marine debris in the form of abandoned, discarded, or fugitive aquaculture materials." The recommended orders would require the Company to undertake "a number of measures, including specifying operating conditions to protect coastal resources and addressing Coastal Act permitting requirements." They would also require the Company to "1) cease and desist from conducting any further unpermitted development . . . ; 2) remove specified items of [u]npermitted [d]evelopment; 3) limit their operations while they seek Coastal Act authorization; 4) implement enumerated resource protection measures; 5) apply for a coastal development permit to obtain permanent authorization for limited, specified development and operations that may be consistent with the Coastal Act; and [6)] if . . . required to vacate the premises under separate requirements, prepare and implement a plan to manage that process consistent with the Coastal Act." At the conclusion of the hearing, the Commission voted unanimously to issue the orders recommended by its Enforcement Staff (2013 Enforcement Orders).

In April 2013, the Company filed a petition for writ of mandate and complaint for declaratory relief in Marin County Superior Court, challenging the 2013 Enforcement Orders. In nine causes of action, the Company alleged the Commission had infringed on the jurisdiction of the State's Department of Fish and Wildlife and violated the Coastal Act, the Company's due process rights, CEQA and Commission regulations. The court consolidated the case with another petition filed at the same time by two other parties, Phyllis Faber and the Alliance for Local Sustainable Agriculture (Alliance), which contained essentially the same claims.

In May 2013, the Commission filed a cross-complaint against the Company. As subsequently amended, it asserted four causes of action alleging the Company had violated the Coastal Act and sought injunctive relief, civil penalties, exemplary damages and attorney fees.

4

In January 2014, the Company (and Faber and the Alliance) filed a cross-complaint against the Commission. As subsequently amended on March 20, 2014, it asserted seven causes of action alleging the Commission violated the consent order, the Coastal Act and the Company's due process rights and sought injunctive and declaratory relief, civil penalties and attorney fees.[1] In its due process cause of action, the Company alleged that the Commission had "a policy or de facto policy" that allowed staff attorneys who acted as prosecutors in enforcement proceedings against a person to act as advisors to other staff acting as advisors in that matter and in factually related matters, including the person's permit application, and that staff attorneys who prosecuted against the Company were acting as advisors to other staff and the Commission about the Company's permit application.

The Company, on March 20, 2014, the same day that it filed its amended cross-complaint, moved for a preliminary injunction, based apparently on this due process cause of action, to enjoin the Enforcement Staff from advising other staff or the Commission regarding the Company's permit application and from advising the Commission in the litigation, and to disqualify the Enforcement Staff from representing the Commission in the litigation. In its motion, the Company contended that the Commission's purported policy of allowing Enforcement Staff to also advise the Commission on "related permit proceedings" violated the Company's due process rights, and that allowing the Enforcement Staff to continue representing and advising the Commission in the litigation "appeared[ed] improper and violate[d] the advocate-witness rule." In its supporting papers, the Company also argued that its due process rights were being violated by the Enforcement Staff members' participation in the litigation after their prosecution of the Company before the Commission.

---

[1] We refer to the proceedings in superior court regarding the petitions and these cross-complaints as the "litigation."

5

The Commission opposed the Company's motion. It argued it was entitled to confer in the litigation with the Enforcement Staff, two of whom happened to be attorneys and one who was staff counsel, and that the due process rules governing adjudicatory hearings in which the Commission is the decision maker did not apply to the subsequent litigation in which the Commission was a party and the court was the decision maker.

On June 26, 2014, the superior court denied the Company's motion because the Company had not shown a likelihood of prevailing on the merits. It made the following factual findings: the Enforcement Staff was not acting as the Commission's legal counsel in the litigation; there was no evidence that the Enforcement Staff was advising the Commission or the Commission's permitting staff on issues involving the Company's incomplete permit application; the Company did not show that the Commission's procedures or policies deprived coastal development permit holders or permit applicants a fair hearing before the Commission; and the "advocate-witness" rule was not violated because the Enforcement Staff members were not advocates in the litigation.

Also on June 26, 2014, the court, having conducted a lengthy hearing in April 2014, ruled on the merits of the consolidated petitions but not on the cross-complaints.[2] The court ruled on various arguments by the Company and the Commission that we need not discuss here. The core of its ruling was that the Commission had the jurisdiction and authority to issue its 2013 Enforcement Orders, except that it should have conducted a California Environmental Quality Act (CEQA) review regarding four ordered removal activities because of their potentially significant environmental impact due to unusual circumstances. These activities consisted of removing the invasive *Didemnum* organism, all triploidy Manila clams, abandoned cultivation equipment and unpermitted onshore

---

[2] The court initially characterized this ruling as a "judgment," but later amended the ruling to indicate it was interlocutory and nonappealable since the court had yet to rule on the cross-complaints. Also, the court did not rule on the merits of the Company's due process allegation because, it wrote, it was "informed that Petitioners have dismissed their Due Process allegation."

structures, fixtures and equipment. The court held these components of its 2013 Enforcement Orders were severable and stayed enforcement of them unless and until the Commission conducted a proper CEQA review.

On August 22, 2014, the Company filed a timely notice of appeal from the court's denial of its preliminary injunction motion. While this appeal was pending, the Company requested that we take judicial notice of four documents: a June 20, 2014 memorandum by an assistant attorney general to the Commission's executive director informally advising about certain legal issues; an August 1, 2014 memorandum by the Commission's chief counsel; an August 15, 2014 memorandum prepared for the Company's counsel about a presentation made by the Commission's deputy chief counsel, all regarding ex parte communications in administrative enforcement proceedings; and meeting agendas from Commission meetings occurring from June to December 2014. We took this request, which is unopposed by the commission, under submission. We now deny it because these documents, which in any event are not necessarily judicially noticeable, were not before the court when it considered the Company's motion and do not constitute legal authority.[3] Therefore, we disregard the Company's arguments to the extent they rely on these documents.

## DISCUSSION

The Company raised a number of issues in its motion below, but on appeal it challenges only the lower court's rejection of the Company's request that the court enjoin

---

[3] Among other things, the Company contends the informal advice letter from the assistant attorney general was legal authority that the Commission was required to disclose to the court when it received it, which appears to have been a few days before the court's issuance of its order denying the Company's motion. We do not agree. The Company's only legal support for this assertion is *Batt v. City & County of San Francisco* (2007) 155 Cal.App.4th 65, 82, fn. 9, disapproved in part on other grounds in *McWilliams v. City of Long Beach* (2013) 56 Cal.4th 613, 626, but this refers only to the obligation to disclose published cases on point to the appellate court. We fail to see how the letter, or the other documents for which the Company requests judicial notice, constitute such legal authority.

7

and disqualify the Enforcement Staff from participating in the litigation on due process grounds. Regarding this issue, the parties debate a number of subjects. We need not address all of them because the Company's appeal poses a dispositive question: As a matter of law, does the three Enforcement Staff members' participation in the litigation after they had prosecuted the Company in Commission enforcement proceedings violate the Company's due process rights? We conclude it does not because the staff members' participation merely helps the Commission act as a party in litigation and not as a decision maker in a quasi-judicial administrative proceeding regarding the Company's interests.

## I.

### *Legal Standards*

#### A. Preliminary Injunction Standards

In considering whether to issue a preliminary injunction, a court evaluates two interrelated factors: the likelihood plaintiff will prevail on the merits at trial and the interim harm to plaintiff or defendant if the court denies or grants the preliminary injunction. (*Continental Bakery Co. v. Katz* (1968) 68 Cal.2d 512, 528.) Plaintiff carries the burden of proof and persuasion on these issues. (*O'Connell v. Superior Court* (2006) 141 Cal.App.4th 1452, 1481.)

We review a lower court ruling on a motion for preliminary injunction for abuse of discretion, unless there are no disputed factual issues and the appeal presents a pure question of law. (*American Indian Model Schools v. Oakland Unified School Dist.* (2014) 227 Cal.App.4th 258, 274.) When the appeal involves a mixed question of fact and law, "[t]o the extent there are conflicts in the evidence of what occurred at the hearing before [the Commission], we view the evidence in the light most favorable to the trial court's decision. We then apply a de novo review as to whether such facts support the trial court's conclusion of law . . . ." (*Nightlife Partners, Ltd. v. City of Beverly Hills* (2003) 108 Cal.App.4th 81, 87 (*Nightlife Partners, Ltd.*).)

8

**B.  The Law Regarding Agency Staff Acting in Prosecutor and Advisor Roles**

The parties debate the significance of several California Supreme Court and appellate cases to the present circumstances.  All of these cases, including our Supreme Court's decision in *Morongo*, *supra*, 45 Cal.4th 731, address a party's due process rights in a quasi-judicial administrative proceeding to an impartial review and decision by the administrative decision maker and in essence hold that an agency's staff may not act so as to create either the unacceptable risk of, or actual, bias by such a decision maker.

In *Howitt v. Superior Court* (1992) 3 Cal.App.4th 1575 (*Howitt*), an employee in the midst of a grievance proceeding before a quasi-independent administrative tribunal that resolved county employment disputes argued in a writ petition that the county counsel's office should be barred from representing his employer and advising the tribunal at the same time.  (*Id*. at p. 1578.)  The appellate court expressed due process concerns about county counsel's dual role because "[b]y definition, an advocate is a partisan for a particular client or point of view.  The role is inconsistent with true objectivity, a constitutionally necessary characteristic of an adjudicator."  (*Id*. at p. 1585.)  Thus, this dual role "does violence" to the "constitutional ideal" of " 'a supposedly neutral decision maker.' "  (*Id*. at p. 1586.)  The court concluded, "Performance of both roles by the same law office is appropriate only if there are assurances that the adviser for the decision maker is screened from any inappropriate contact with the advocate."  (*Ibid*.)

In *Nightlife Partners, Ltd.*, *supra*, 108 Cal.App.4th 81, operators of an adult entertainment business applied to the city for renewal of a permit, which the city denied.  The appellate court affirmed the lower court's ruling that the operators' due process rights were violated because there was substantial evidence that the assistant city attorney who played an active and significant part in denying the renewal application also advised and assisted the hearing officer in reviewing that denial.  (*Id*. at pp. 87–88, 90–91.)  The court rejected the city's contention that there can be no due process violation absent actual bias on the part of the decision maker.  (*Id* at p. 86.)  The attorney's "presence" as the hearing

9

officer's advisor "was the equivalent of trial counsel acting as an appellate court's advisor during the appellate court's review of the propriety of a lower court's judgment in favor of that counsel's client. It requires no citation of authority exactly on all fours with this fact pattern in order to justify the conclusion that [the attorney's] role as advisor to the decision maker violated petitioners' right to due process. There was a clear *appearance* of unfairness and bias. This was sufficient to support the trial court's ruling." (*Id*. at p. 94.)

In *Quintero v. City of Santa Ana* (2003) 114 Cal.App.4th 810 (*Quintero*), disapproved in *Morongo*, *supra*, 45 Cal.4th 731, 740, fn. 2, as later summarized in *Morongo*, "a city employee (Quintero) appealed a misconduct discharge to the city's personnel board. After a hearing, the personnel board upheld the discharge. Quintero then petitioned the superior court for a writ of mandate, arguing that the administrative hearing before the personnel board was unfair because the deputy city attorney (Halford) who had acted as prosecutor had concurrently represented the personnel board in civil actions. ([*Quintero*,] at p. 812.) The superior court denied the petition, but on Quintero's appeal the Court of Appeal reversed, finding 'a clear appearance of bias and unfairness at the administrative hearing.' (*Ibid*.)

". . . After acknowledging there was no evidence that Halford . . . had also acted as the city personnel board's legal adviser in the Quintero discharge matter, the court proceeded to examine Halford's other interactions with the personnel board. (*Quintero*, *supra*, 114 Cal.App.4th at pp. 814–816.) The court concluded that in litigation over the discharge of two other city employees, Cabrera and Pollitt, internal separation of advisory and prosecutorial functions had not been maintained because Halford had represented the personnel board in superior court mandate proceedings after acting as a prosecutor in administrative proceedings before that board. (*Id*. at p. 815.) The court also noted that Halford had played a leading role in advising the personnel board about revision of its procedural rules and had acted as the personnel board's legal adviser in other important matters during the years immediately preceding Quintero's discharge. (*Id*. at p. 816.)

10

"Stating that '[i]t appears the lines distinguishing Halford's roles of advocate and adviser have become blurred,' the Court of Appeal in *Quintero* stated that '[f]or the [personnel board] to allow its legal adviser to also act as an advocate before it creates a substantial risk that the [personnel board]'s judgment in the case before it will be skewed in favor of the prosecution.' (*Quintero*, *supra*, 114 Cal.App.4th at p. 817.) The court explained its holding in these words: 'We do not hold that the frequent contacts between Halford and the [personnel board] are themselves sufficient to demonstrate the probability of actual bias. Rather, our decision is based on the totality of circumstances.' (*Ibid*.)" (*Morongo*, *supra*, 45 Cal.4th at pp. 739–740.)

In *Department of Alcoholic Beverage Control v. Alcoholic Beverage Control Appeals Bd*. (2006) 40 Cal.4th 1 (*Department of Alcoholic Beverage Control*), our Supreme Court considered a procedure employed by the Department of Alcoholic Beverage Control for license enforcement matters. An evidentiary hearing was held before an administrative law judge who made factual findings. After the hearing but before a decision was made, the department prosecutor sent a summary of the hearing and a recommended resolution of the matter ex parte to the ultimate administrative decision maker—the department's director or delegee—or the decision maker's advisor. (*Id*. at pp. 4–6.) The court concluded this ex parte communication was improper because, while "administrative agencies have considerable leeway in how they structure their adjudicatory functions, they may not disregard certain basic precepts. One fairness principle directs that in adjudicative matters, one adversary should not be permitted to bend the ear of the ultimate decision maker or the decision maker's advisers in private." (*Id*. at p. 5.) The court held that the Administrative Procedure Act (Gov. Code, § 11340 et seq.) (APA), as overhauled in 1995, adopted this and other precepts of fairness, and barred such ex parte communications. (*Department of Alcoholic Beverage Control*, at p. 5.)

Finally, in *Morongo*, *supra*, 45 Cal.4th 731, the Morongo Mission Band of Indians, appearing in a license revocation proceeding before the State Water Resources Board

11

sought to disqualify the enforcement team of attorneys prosecuting its license revocation because one of the enforcement attorneys was concurrently acting as an adviser to the board in a separate, unrelated matter. (*Id.* at pp. 734, 735, fn. 1.) There was no evidence this arrangement caused actual bias. The court rejected the appellate court's adoption of a due process standard that called for complete separation of an agency's enforcement and advisory functions "not only as to each individual case, but also as to all cases, related or unrelated, that are pending before the agency at any given point of time." (*Id.* at p. 739; see *id.* at pp. 741–742.) Instead, "construing the constitutional due process right to an impartial tribunal, we take a more practical and less pessimistic view of human nature in general and of state administrative agency adjudicators in particular. In the absence of financial or other personal interest, and when rules mandating an agency's internal separation of functions and prohibiting ex parte communications are observed, the presumption of impartiality can be overcome only by specific evidence demonstrating actual bias or a particular combination of circumstances creating an unacceptable risk of bias." (*Id.* at p. 741.) The court found no such circumstances in the case before it because there was no evidence the attorney acted in both capacities "in this or any other single adjudicative proceeding," she had previously advised the board in only one matter and she was just one of a group of staff attorneys who provided advice to the board. (*Id.* at pp. 740–741.) The court distinguished *Quintero* and disapproved of its "language suggesting the existence of a per se rule barring agency attorneys from simultaneously exercising advisory and prosecutorial functions, even in unrelated proceedings." (*Morongo*, at pp. 739–741 & 740, fn. 2.)

As our discussion of this case law indicates, the due process concern these cases address is whether the impartiality of an administrative decision maker might be affected by a prosecuting attorney who also advises the decision maker in the course of the administrative proceeding or has advised the decision maker so frequently in other proceedings as to create an unacceptable risk of bias or actual bias that affects the result of

12

the administrative proceeding. Our Supreme Court and appellate courts have held the due process right to an impartial administrative decision maker is protected when staff counsel performing a prosecutorial role are distinct from counsel playing an advisory role in the same matter and the two are screened from each other. An exception may occur where staff counsel has advised the decision maker for so long or so frequently as to create an unacceptable risk of, or actual, bias when he or she then performs the role of prosecutor before that same administrative tribunal. The impartiality of the decision maker is further protected when ex parte communications between a prosecutor and the decision maker about substantive issues in the administrative proceeding do not occur before the decision is made.

### C. Analysis

The Company argues the lower court erred as a matter of law by not barring the Enforcement Staff from participating in the litigation on the Commission's behalf and from advising the Commission confidentially about the litigation's subject matter. We disagree and conclude the court did not err in denying the Company's motion.

Before addressing this issue directly, we first for clarity's sake discuss a point the Company raises and then drops in its appellate papers. That is, it first contends that, contrary to the lower court's determination, the Enforcement Staff acted as the Commission's legal counsel in the litigation as indicated by appearances noted in the court's register of actions. It further contends there was no evidence to the contrary, since the Commission's counsel merely argued at the motion hearing that the Enforcement Staff were client representatives rather than legal counsel. However, in its reply brief, the Company concedes the point and states there are legal, but not factual, issues between the parties (while nonetheless asserting that the Commission's credibility is suspect given the appearances noted in the register of actions). In any event, the superior court's determination that the Enforcement Staff did not act as Commission counsel in the litigation is supported by substantial evidence—specifically, a declaration by the

13

Commission's legal counsel stating that none of the Enforcement Staff acted as legal counsel in the litigation.

The Company's legal arguments that the Enforcement Staff should not be allowed to participate in the litigation, even as client representatives, and communicate with the Commission or its counsel ex parte are based on two contentions: first, that case law prohibits such conduct and second, that the Commission may in the future act further regarding its 2013 Enforcement Orders and therefore its decision is not yet final. Neither of these arguments is persuasive.

### 1. *The Case Law Cited by the Company Does Not Prohibit the Enforcement Staff's Activities in the Litigation.*

The Company argues the separation of prosecuting and advising attorney roles and prohibition against ex parte communications between prosecutors and administrative decision makers continues to apply when an administrative decision proceeds to litigation. Its argument is based on a fundamental misreading of *Quintero* and *Morongo*.

The Company focuses on a portion of the *Quintero* opinion that discusses the fact that Halford, the attorney who was prosecuting Quintero, had played a dual role in the termination of another employee, Cabrera, including during the time that Quintero's matter was pending. The *Quintero* court noted that Halford had represented the police department in the administrative proceedings against Cabrera, and then had represented the city, the personnel board and the police department in litigation initiated by Cabrera (after which the matter had returned to the board for further consideration). (*Quintero*, *supra*, 114 Cal.App.4th at pp. 814–816.) In the Company's view, "[t]his is exactly the situation here."

This is too facile a reading of *Quintero*. The court did not determine that Halford had improperly played a dual role in the Cabrera matter. Rather it pointed to his extensive activities in the Cabrera matter, including as counsel for the personnel board in litigation, to point out that he had developed an extensive "ongoing relationship" with the board (*Quintero*, *supra*, 114 Cal.App.4th at p. 816), particularly, as the *Morongo* court put it, as a

14

"sole or primary legal adviser" to it. (*Morongo*, *supra*, 45 Cal.4th at p. 740.) Given this extensive ongoing relationship, the court concluded the difference between Halford's prosecutorial and other roles had "blurred," creating a "substantial risk that the [personnel board]'s judgment in the [Quintero] case before it will be skewed in favor of the prosecution." (*Quintero*, at p. 817.) In other words, Halford's activities over time, including in other matters such as Cabrera's litigation, jeopardized the impartiality of the administrative decision maker in the Quintero administrative proceeding; as the court put it, "[t]he chance that the Board will show a preference toward Halford, even ' "perhaps unconsciously," ' is present and unacceptable." (*Ibid.*) This is not the situation here. *Quintero* simply does not address whether a prosecutor in an administrative proceeding can advise the administrative decision maker when the decision maker subsequently sues or is sued.

Regarding *Morongo*, the Company asserts "that administrative decision-makers should remain objective, even after the case has moved to superior court" and that this "is the implicit rationale of the conclusion in *Morongo* that 'the agency's internal separation of functions had not been maintained' and that the deputy city attorney 'had acted in both prosecutorial and advisory capacities' [in *Quintero*] when he first appeared before an agency and then represented that agency when the matter moved to superior court. (*Morongo*, *supra*, 45 Cal.4th at [p.] 740.)" The attorney cannot, as the Company puts it, "cross[] over" from the administrative prosecution team to a subsequent litigation advisory team. The Company quotes from *Morongo*, including that " 'a prosecutor cannot communicate off the record with the agency decision maker or the decision maker's advisers about the substance of the case.' " (*Id.* at p. 738, italics omitted.)

The Company misconstrues *Morongo*. The Company ignores that *Morongo*'s separation of function discussion is in the middle of a consideration of *Quintero* and the appearance of bias created by Halford's extensive ongoing relationship with the personnel board. The Company similarly ignores that *Morongo*'s ex parte communications quote is

15

regarding contacts between an administrative prosecutor and a decision maker during the pendency of an administrative proceeding. Like *Quintero* and the other cases we have discussed here, *Morongo* addressed due process concerns about dual roles played by counsel in administrative matters because of the potential impact on the administrative decision maker's impartiality in deciding a particular matter before it, which is not at issue here. (See *Morongo*, *supra*, 45 Cal.4th at p. 737 ["When, as here, an administrative agency conducts adjudicative proceedings, the constitutional guarantee of due process of law requires a fair tribunal"]; *Quintero*, *supra*, 114 Cal.App.4th at p. 812 ["[w]e find there was a clear appearance of bias and unfairness at the administrative hearing and reverse and remand on that basis"]; *Howitt*, *supra*, 3 Cal.App.4th at p. 1579 ["This case presents the foundational question . . . whether a county counsel's office 'is ever permitted to place [it]self in [the] position' of acting as an advocate for one party in a contested hearing while at the same time serving as the legal adviser for the decision maker"]; *Nightlife Partners, Ltd.*, *supra*, 108 Cal.App.4th at p. 90 ["due process in an administrative hearing . . . demands an appearance of fairness and the absence of even a *probability* of outside influence on the adjudication"]; *Department of Alcohol Beverage Control*, *supra*, 40 Cal.4th at p. 10 [prosecutors and other adversarial agency employees should not have off-the-record contact about substantive issues with decision makers "during the pendency of any adjudicative proceeding"].)[4]

---

[4] Similarly, the Company unpersuasively argues, quoting *Howitt*, *supra*, 3 Cal.App.4th at pp. 1586–1587, that the Commission has failed to meet its " 'burden of providing . . . assurances' " that it has maintained a separation of the prosecutorial and advisory functions, but instead has mainly argued this requirement is not germane to the Company's motion in the litigation. We agree with the Commission, for the simple reason that this appeal and the motion that led up to it focused on proceedings in court. Given the Company's focus on the litigation conduct of the Commission and its staff, the Commission had no reason to address whether an adequate screen existed during the administrative proceedings.

The Company further contends that contrary to the requirements outlined in these cases, the Commission "*does not* screen employees assigned to the enforcement team from inappropriate contact with Commission members, nor does it strictly apply (or apply at all) the rules prohibiting ex parte communications," and that pursuant to *Morongo* it is always a due process violation when a prosecuting attorney advises an administrative decision maker about the matter being prosecuted. These arguments, however, presume circumstances that are not present here. *Morongo* and these other cases are not controlling, and the Company cites no case holding there is a due process right to have an administrative agency remain impartial after the administrative proceeding has been completed and its decision has become the subject of litigation. Nor do communications between the Commission and its staff during the litigation pose any risk to the impartiality of the current decision maker, i.e., the superior court. Neither *Morongo* nor any of the other cases the Company cites provide support for the notion that an administrative prosecutor cannot advise confidentially or represent the agency decision maker in subsequent litigation about that matter. We know of no due process principle that would justify such a prohibition. Once litigation has been filed, the Commission and its staff share the same interest in defending its decision. Due process does not require that we tie the hands of the Commission in the litigation and prevent it from reaching out to the Enforcement Staff for expertise and advice in circumstances in which administrative proceedings are no longer pending and it is a party to litigation challenging its decision.

## 2. *That the Commission May Further Address the 2013 Enforcement Orders in the Future Does Not Bar the Enforcement Staff's Present Activities.*

The Company also contends there is a likelihood that the Commission will further address the 2013 Enforcement Orders in the future because of the court's ruling that the Commission must conduct a CEQA review regarding four ordered activities, as we have mentioned. Therefore, the Company argues, the administrative matter is not yet "fully resolved" and the Commission should not have ex parte communications with the

17

Enforcement Staff about the substance of the matter, including in the litigation. This too is unpersuasive.

The Company cites *Department of Alcohol Beverage Control*, *supra*, 40 Cal.4th 1, in which, as the Company puts it, "the Supreme Court considered, and rejected, the argument that the ex parte prohibition applies only at the evidentiary hearing"[5] and instead "concluded that the APA prohibition was intended to apply 'to limit ex parte contacts in all nonratemaking proceedings that employ an evidentiary hearing *in the course of adjudicating* the rights of a single party.' [*Department of Alcohol Beverage Control*, at p. 11.]" "[T]he Commission remains 'in the course of adjudicating' [the Company's] rights," continues the Company's argument, "even though litigation is proceeding in superior court, because the Commission retains adjudicatory authority over Drakes Bay. It can modify or rescind the 2013 Orders at any time. It can comply with CEQA and reissue those parts of the 2013 Orders that have been invalidated . . . , or it can decide to let them die."

As the Company's own discussion demonstrates, its argument is built on speculation about what the Commission might do in the future, if anything. Nothing in the case law the Company cites indicates an administrative agency that has issued a final decision should be barred from communicating with enforcement or prosecution staff in litigation about that decision simply because that agency may act on related matters in the future. *Department of Alcohol Beverage Control* referred not to a continued bar of ex parte communications during litigation about an already issued administrative decision, but to a communications bar during the period between an evidentiary hearing and the making of the administrative decision for the purpose of protecting the decision maker's impartiality in making that decision. (See *Department of Alcohol Beverage Control*, *supra*, 40 Cal.4th

---

**5** As we have discussed, *Department of Alcohol Beverage Control* addressed the application of certain APA provisions that are not argued to apply here. (See *Department of Alcohol Beverage Control*, *supra*, 40 Cal.4th at p. 5.) Nonetheless, in doing so, the court discussed issues of procedural fairness that are relevant here.

18

at p. 5.)  That is not analogous to the present circumstance, where the Commission has already made its decision and now appears as a party in the litigation.  The Company contends there may eventually be further proceedings before the Commission.  However, the Company provides no legal authority establishing that speculation about potential future proceedings should bar the Enforcement Staff from assisting the Commission in defending itself in present litigation.  We conclude that it should not.  We see no reason why the Commission should be impaired in exercising its right to litigate as best it can.

In short, the Company does not establish that the lower court erred as a matter of law.  We agree with the lower court that the Company is unlikely to prevail at trial on the merits of its due process claim regarding the litigation.  Therefore, we have no reason to reverse the lower court's ruling.  In light of our conclusions, we need not address the remainder of the issues raised by the parties.

## DISPOSITION

The order appealed from is affirmed.  The Commission is awarded costs of appeal.

_____

STEWART, J.


We concur.



_____

RICHMAN, Acting P.J.



_____

MILLER, J.











*Drakes Bay Oyster Co. v. California Coastal Commission* (A142820)

Trial Court:   Marin County Superior Court

Trial Judge:   Hon. Roy Chernus

Counsel:

Briscoe Ivester & Bazel, Lawrence S. Bazel, Peter Prows; Idell Law Firm, Richard J. Idell for Plaintiff and Appellant.

Kamala D. Harris, Attorney General, John A. Saurenman, Senior Assistant Attorney General, Christiana Tiedemann, Supervising Deputy Attorney General, Joel S. Jacobs, Deputy Attorney General for Defendant and Respondent.]