Filed 12/22/22  Jones v. City of Loma Linda CA4/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

|  |  |
|---|---|
| STEVE JONES, | |
| Plaintiff and Appellant, | E076772 |
| v. | (Super.Ct.No. CIVDS1938759) |
| CITY OF LOMA LINDA et al., | OPINION |
| Defendants and Respondents. | |

APPEAL from the Superior Court of San Bernardino County.  Donald R. Alvarez, Judge.  Affirmed.

Rains Lucia Stern St. Phalle & Silver and Michael A. Morguess for Plaintiff and Appellant.

Colantuono, Highsmith & Whatley, Pamela K. Graham, Merete E. Rietveld and Ryan A. Reed for Defendants and Respondents.

The City Manager for defendant and respondent City of Loma Linda (the City) terminated the employment of plaintiff and appellant Steven Jones (Jones). Jones administratively appealed, and the City Council affirmed the decision to terminate Jones's employment. Jones petitioned the trial court for a writ of mandate, and the trial court denied the petition.

On appeal in this court, Jones raises two issues. First, Jones contends the trial court erred by not finding that there was an unacceptable risk the City Council was biased in favor of the City because the attorney who represented the City in front of the City Council had represented the City in prior writ proceedings in the trial court, in this same case. Second, Jones asserts the City Council abused its discretion by affirming the decision to terminate his employment. We affirm the order.

## FACTUAL AND PROCEDURAL HISTORY

Jones was a supervisor for the paramedic program within the City's Fire Department. In January 2014, one of the employees whom Jones supervised, Scott Toppo (Toppo), punched a patient. According to the City, Toppo told Jones about punching the patient; Jones failed to report the incident; and when the incident came to light, Jones was dishonest in claiming not to know about the violence. The City accused Jones of lying and terminated his employment effective May 9, 2014.

Jones "filed a request for an appeal [of the termination decision] to the Office of Administrative Hearings [(OAH)]." In June 2014, Jones entered into a contract with the City waiving his right to a hearing at the OAH and "agree[ing] to have the evidentiary hearing conducted by an advisory hearing officer." Additionally, the contract provided,

2

"Within ninety (90) days of the receipt of the hearing officer's findings and recommendation and transcript, the City Council shall adopt, amend, modify or reject the recommended findings, conclusions, and/or opinions of the hearing officer. . . . The decision of the City Council shall be final and conclusive."

In March 2015, the hearing officer recommended that Jones's employment be reinstated and that Jones receive a written admonishment. The City Council rejected that recommendation and affirmed the City staff's decision to terminate Jones's employment. In the 2015 proceedings, during which the City Council considered the hearing officer's recommendation, Steve A. Filarsky (Filarsky), an attorney, represented the Fire Department/City.

In August 2015, Jones petitioned the trial court for a writ of mandate.[1] In the petition, Jones named the City as the respondent and did not name a real party in interest. Filarsky represented the City in the trial court. Filarsky, on behalf of the City, opposed Jones's petition. The trial court denied the petition.

In February 2017, Jones appealed to this court. (*Jones v. City of Loma Linda* (Feb. 13, 2019, E067781) [nonpub. opn.] [2019 WL 581119].) In that appeal, this court concluded substantial evidence supported the finding that Jones was dishonest during the City's investigation when he claimed to be ignorant of Toppo's act of violence. We concluded that other findings affirmed by the City Council were not supported by

---

[1] On our own motion, we take judicial notice of the clerk's transcript in *Jones v. City of Loma Linda*, Court of Appeal case No. E067781. (Evid. Code, § 452, subd. (d)(1).)

3

substantial evidence. Because we reversed some of the findings against Jones, we remanded the matter so the City Council could reconsider the discipline imposed.

In September 2019, when the matter returned to the City Council to consider what discipline, if any, to impose upon Jones, the Fire Department/City was again represented by Filarsky. Jones and the Fire Department provided briefs and oral argument on the issue of discipline. In Jones's brief, he argued that Filarsky's "role as advocate for the [City] Council in [the] Superior Court and now" representing the Fire "Department before the [City] Council creates an additional unacceptable probability of bias." Jones asserted the City Council had a relationship of trust with Filarsky which "create[d] an unacceptable probability that the Council will simply adopt the position and arguments" of Filarsky.

At the outset of oral argument by Jones's attorney, Councilmember Dailey questioned whether Jones or an employee union had paid for Jones's attorney. Jones's attorney questioned the relevance of who had paid for the attorney's services, and Councilmember Dailey responded, "Okay, go ahead." Jones's attorney asserted Jones's dishonesty did not necessitate termination and that "demotion might be more appropriate just to remove the supervisory duties, if that's the concern." Jones's attorney contended that Jones was not habitually dishonest because Jones had a 26-year career and never before had an issue involving dishonesty.

Jones did not attend the hearing before the City Council. When the oral argument was over, Councilmember Dailey said he had many questions for Jones, such as "Does he acknowledge that he lied? And how does he feel about that? If he had it all

4

to do over again, would he do anything different?"  Jones's attorney asserted that if the City Council wanted to schedule an evidentiary hearing, then Jones would attend and answer questions.

The City Council issued a written decision affirming the termination of Jones's employment.  The City Council explained, "Termination is the appropriate remedy when a Battalion Chief not only fails in the performance of his supervisory capacities regarding the reporting and discipline of a paramedic who has inappropriately struck a patient, but also lies to cover up those failings in the face of formal disciplinary investigations. . . .  [¶]  There is a serious likelihood of recurrence of Jones'[s] dishonesty where he has demonstrated that trait in such a serious circumstance, and through repeated interviews and investigations.  Jones has demonstrated that his dishonesty is not an isolated or transient behavioral act on his part, but rather a continuing character trait."

The City Council concluded, "Progressive discipline, including suspensions, demotion, written admonishment or any other lesser penalty, would be inadequate to address the dishonesty of Jones in the present case due to the seriousness of the circumstances, the repeated dishonesty, the harm to the public service and the potential future detriment to the City in liability situations."

Jones again sought a writ of mandate in the trial court, in December 2019.  Jones asserted that, because Filarsky advocated on behalf of the City Council's decision in the 2015 writ proceedings, Filarsky's representation of the Fire Department/City in the remanded 2019 City Council proceedings created an unacceptable risk that the City

5

Council would be biased in favor of the Fire Department/City. Additionally, Jones contended the City Council abused its discretion by affirming the decision to terminate his employment because other employees involved in the incident received lesser discipline.

Filarsky submitted a declaration in support of the City's opposition to the writ petition. Filarsky declared that he was hired by City staff to represent the City—not the City Council—in the 2015 writ proceedings. Filarsky further declared, "At not time [*sic*] did I meet with any member of the City Council concerning the [2015] writ of mandate. At no time did I provide advice to the City Council concerning the [2015] writ of mandate." Filarsky continued, "I have no personal knowledge that any member of the City Council knew of my representation of the City in the [2015] writ of mandate matter." Filarsky concluded, "Other than the oral arguments [in front of the City Council in this case], I have had zero contact with any members of the City Council, collectively and/or individually." In the 2019 writ proceedings, the trial court limited its review to the administrative record, and therefore did not consider Filarsky's declaration.[2]

---

[2] Filarsky's declaration was outside of the administrative record. Code of Civil Procedure section 1094.5, subdivision (e), provides, "Where the court finds that there is relevant evidence that, in the exercise of reasonable diligence, could not have been produced . . . at the hearing before respondent, . . . in cases in which the court is authorized by law to exercise its independent judgment on the evidence, the court may admit the evidence at the hearing on the writ without remanding the case."

Filarsky's declaration could not have been produced at the administrative level because Jones's brief and the City's brief to the City Council were both served on September 5, 2019. Thus, at the City Council level, the Fire Department/City did not

*[footnote continued on next page]*

The trial court concluded that Jones "cite[d] to no specific evidence demonstrating" bias on the part of the City Council. As to the decision to terminate Jones's employment, the trial court held that it was within the bounds of discretion for the City Council to affirm the termination of Jones's employment due to Jones's dishonesty.

## DISCUSSION

A.     BIAS

1.     *LAW*

" 'When . . . an administrative agency conducts adjudicative proceedings, the constitutional guarantee of due process of law requires a fair tribunal. [Citation.] A fair tribunal is one in which the judge or other decision maker is free of bias for or against a party.' " (*Fresh Start*, *supra*, 57 Cal.4th at p. 215.)

"To show nonfinancial bias sufficient to violate due process, a party must demonstrate actual bias or circumstances ' "in which experience teaches that the probability of actual bias on the part of the judge or decisionmaker is too high to be constitutionally tolerable." ' [Citation.] The test is an objective one. [Citations.]

---

have an opportunity to respond in writing to Jones's bias argument because the briefs were drafted simultaneously, rather than sequentially. The allegation of bias implicated Jones's fundamental right of due process (*Today's Fresh Start, Inc. v. Los Angeles County Office of Education* (2013) 57 Cal.4th 197, 221 (*Fresh Start*)), which triggered the de novo standard of review in the trial court (*JKH Enterprises, Inc. v. Department of Industrial Relations* (2006) 142 Cal.App.4th 1046, 1057). Because the de novo standard of review applied and the declaration could not have been produced at the City Council level, Filarsky's declaration did not need to be excluded. (Code Civ. Proc., § 1094.5, subd. (e).)

While the 'degree or kind of interest . . . sufficient to disqualify a judge from sitting "cannot be defined with precision" ' [citation], due process violations generally are confined to 'the exceptional case presenting extreme facts.' " (*Fresh Start*, *supra*, 57 Cal.4th at p. 219.)

" '[T]he burden of establishing a disqualifying interest rests on the party making the assertion.' [Citation.] That party must lay a 'specific foundation' for suspecting prejudice that would render an agency unable to consider fairly the evidence presented at the adjudicative hearing [citation]; it must come forward with 'specific evidence demonstrating actual bias or a particular combination of circumstances creating an unacceptable risk of bias' [citations]. Otherwise, the presumption that agency adjudicators are people of ' "conscience and intellectual discipline, capable of judging a particular controversy fairly on the basis of its own circumstances" ' will stand unrebutted." (*Fresh Start*, *supra*, 57 Cal.4th at pp. 221-222.)

2.      *STANDARD OF REVIEW*

The issue of whether the City Council was biased implicated Jones's fundamental right of due process (*Fresh Start*, *supra*, 57 Cal.4th at p. 221), which triggered the de novo standard of review in the trial court (*JKH Enterprises, Inc. v. Department of Industrial Relations*, *supra*, 142 Cal.App.4th at p. 1057). We review the trial court's decision, as opposed to the City Council's decision, and would typically apply the substantial evidence standard of review to determine if there were sufficient evidence of bias. (*Id.* at p. 1058.) However, Jones is asserting that the undisputed fact that Filarsky represented the City in the 2015 writ of mandate proceedings is sufficient

8

proof of bias.  Because the fact that Filarsky represented the City is undisputed, we will apply the de novo standard of review.  (*Boling v. Public Employment Relations Board* (2018) 5 Cal.5th 898, 912-913.)

### 3.    *ANALYSIS*

Jones contends the trial court erred by not finding a risk that, in 2019, the City Council was biased in favor of the City due to Filarsky's representation of the City in 2015.  We consider whether "this is the 'exceptional case' [citation] involving a constitutionally unacceptable risk of actual bias."  (*Fresh Start*, *supra*, 57 Cal.4th at p. 222.)

The City—not the City Council—was the named respondent in the 2015 writ proceedings.  There is no indication that the City Council communicated with Filarsky during his representation of the City in 2015.  During the hearing on the 2019 writ petition, Jones's attorney argued, "I'm sure if I were to go back and look at the city council minutes somewhere, you know, around the time the petition was filed, look for the closed session agenda, this matter would appear . . . .  Someone signed the check to Mr. Filarsky's firm.  Someone on a consent calendar or council on a consent calendar approved payments.  Things like that happen.  So it's not speculation.  [¶]  The point that they may not have actually talked face-to-face and the council never said, can you have Mr. Filarsky here for the next meeting to give us an update, they could have.  He would be the one to ask."

Jones's attorney's comments highlight that it is unclear whether Filarsky had direct communication with the City Council about the 2015 writ of mandate, as opposed to communicating with City staff. If there was not direct communication between Filarsky and the City Council, then there would be no reason to suspect bias on the part of the City Council. Due to the lack of evidence of direct communication between Filarsky and the City Council, we cannot conclude that this is an " 'exceptional case presenting extreme facts,' " which means a due process violation has not been demonstrated. (*Fresh Start*, *supra*, 57 Cal.4th at p. 219.)

Jones asserts the lack of communication between Filarsky and the City Council during the 2015 writ proceedings is irrelevant because "[t]he issue is the arrangement, not whether there is direct communication." By that, Jones means the City Council may have been implicitly biased toward Filarsky due to Filarsky's position representing the City. Any attorney representing the Fire Department would have been affiliated with the City. Thus, evidence of direct communication between Filarsky and the City Council involving this case would be needed to demonstrate bias.

In *Quintero v. City of Santa Ana*, the appellate court highlighted records reflecting that the assistant city attorney (Halford) had worked with the City of Santa Ana Personnel Board (the Board) in such a manner to "give the appearance of bias and unfairness and suggest the probability of his influence on the Board." (*Quintero v. City of Santa Ana* (2003) 114 Cal.App.4th 810, 812, 814, disapproved of in part in *Morongo Band of Mission Indians v. State Water Resources Control Bd.* (2009) 45 Cal.4th 731, 740, fn. 2.)

10

For example, in 1997, Halford had advised the Board on revisions to its appellate rules and "advised the Board of the procedure to adopt the new rules." In 1998, "Halford introduced a new board secretary to the members of the Board." In 1999, the Board directed Halford to initiate the process of amending the Santa Ana Municipal Code. The appellate court concluded that Halford effectively served as "the Board legal adviser" over the years, so when Halford appeared as an advocate before the Board, it gave "the appearance of bias and unfairness." (*Quintero*, *supra*, 114 Cal.App.4th at pp. 814-817.)

In the instant case, Filarsky appeared as an advocate on behalf of the City staff's decision to terminate Jones's employment. We see no history of Filarsky serving as an advisor to the City Council in the manner that Halford did in *Quintero.* We see nothing indicating that the City Council communicated with Filarsky during the 2015 writ proceedings that would indicate that City Council had a particular bias toward Filarsky. In sum, the instant case is distinguishable from *Quintero*.

Jones asserts that "Councilmember Dailey's apparent differing treatment of Mr. Filarsky and [Jones's] counsel at the remanded hearing" demonstrate bias. We do not agree that the comments established a risk of bias. Councilmember Dailey said during the hearing, "I take these things very seriously. I mean I've taken your brief and the other brief and I've marked it all up and I've read it line by line. . . . I do have questions of Mr. Jones. Does he acknowledge that he lied? And how does he feel about that? If he had it all to do over again, would he do anything different?" Councilmember Daily's comments indicate he was open to understanding Jones's position because the

11

Councilmember had read Jones's brief and thought of questions to ask Jones. The questions that Councilmember Daily wanted to ask indicated that he was curious about whether Jones was remorseful because that could impact the discipline imposed. Councilmember Daily's comments do not indicate that he was biased in favor of Filarsky/the City.

Jones contends that, at the City Council level, the Fire Department/City "failed to respond" to his bias contention, and therefore the Fire Department/City has "forfeited any arguments as to all of these issues." The proof of service for Jones's brief to the City Council reflects it was emailed to Filarsky on September 5, 2019. The Fire Department's brief to the City Council is also dated September 5, 2019, and the proof of service for its brief reflects it was emailed to Jones's attorney on September 5, 2019. Thus, it appears the parties' briefs to the City Council were drafted simultaneously and both delivered on September 5, 2019, such that one would not expect the Fire Department to respond to issues raised in Jones's brief. Therefore, we do not treat the issue as impliedly conceded by the Fire Department/City.

B.     TERMINATION OF JONES'S EMPLOYMENT

Jones contends the City Council abused its discretion by affirming the City staff's decision to terminate his employment.

When reviewing an administrative agency's employee disciplinary decision, we apply "the same abuse of discretion standard applied by the trial court." (*County of Los Angeles v. Civil Service Com. of Los Angeles* (2019) 40 Cal.App.5th 871, 878.) We will affirm "if reasonable minds can differ with regard to the propriety of the disciplinary

12

action." (*Deegan v. City of Mountain View* (1999) 72 Cal.App.4th 37, 46.) Thus, even if the penalty imposed appears harsh in our view, we are not "free to substitute our discretion for that of the administrative body," if reasonable minds might find the harsh penalty appropriate. (*Gonzalez v. State Personnel Bd.* (1995) 33 Cal.App.4th 422, 428-429.)

In reviewing disciplinary decisions, "the overriding consideration . . . is the extent to which the employee's conduct resulted in, or if repeated is likely to result in, '[h]arm to the public service.' [Citations.] Other relevant factors include the circumstances surrounding the misconduct and the likelihood of its recurrence." (*Skelly v. State Personnel Bd.* (1975) 15 Cal.3d 194, 218.)

The City Council found that Jones failed to report Toppo's act of violence and then repeatedly lied during the ensuing investigation by denying he had been aware of the violence. Jones's choice to be dishonest about knowing that Toppo was violent with a patient meant that City staff could not rely on Jones's judgment in serious situations. In other words, by repeatedly choosing to lie about the violence, Jones revealed poor decision making, and his repeated poor decisions harmed the public service.

Jones contends the "termination is out of proportion to the lack of serious consequences to other employees who actually witnessed what happened and concealed it by not reporting it." For example, Toppo was demoted, not terminated. Nowhere does Jones provide law reflecting that the discipline imposed on other employees is a relevant consideration in the abuse of discretion analysis. Nevertheless, one could reasonably expect Jones's discipline to differ from other employees' discipline because

13

(1) Jones was Toppo's supervisor—not merely a coworker, and (2) Jones repeatedly lied during the City's investigation into the incident.

In the City Council's decision, it explained, "Termination is the appropriate remedy when a Battalion Chief not only fails in the performance of his supervisory capacities regarding the reporting and discipline of a paramedic who has inappropriately struck a patient, but also lies to cover up those failing in the face of formal disciplinary investigations." Thus, the City explained that the more severe discipline of termination was necessary due to Jones's position as a supervisor and due to his continual dishonesty.

Jones asserts that he had an "unblemished 26-year career," so terminating his employment was an abuse of discretion. Jones's long and mostly untarnished career indicates that it is less likely his dishonesty will be repeated, which is a relevant factor. (*Skelly v. State Personnel Bd.*, *supra*, 15 Cal.3d at p. 218.) However, "the overriding consideration in these cases is the extent to which the employee's conduct resulted in . . . '[h]arm to the public service.' " (*Ibid.*) The City Council could reasonably conclude that the harm to the public service was great because Jones repeatedly had such poor judgment in this serious situation that his decision making could no longer be relied upon, which meant terminating his employment was the only reasonable option.

## DISPOSITION

The order is affirmed.  Respondents are awarded their costs on appeal.  (Cal.

Rules of Court, rule 8.278(a)(1).)

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

MILLER
Acting P. J.

We concur:

SLOUGH
J.

RAPHAEL
J.